LEHMAN, adm'r, &c. *vs.* THE CITY OF BROOKLYN.

In an action by the administrator of a deceased person, to recover damages for the negligence of the defendant, whereby the intestate was deprived of his life, to entitle the plaintiff to recover, it must appear affirmatively that the accident resulted wholly from the negligence of the defendant, and that the negligence and improvidence of the intestate did not contribute to bring it about.

The negligence of the defendant must be made out and established by proof, and not be left to be inferred from circumstances.

Where there was a well in one of the streets of the city of Brooklyn, level with the grade of the sidewalk, and usually covered with a wooden cover having a square opening in the center, which was also covered with a lid, opening and shutting on leather hinges, and the intestate, a child four years of age, was found dead in the well, within half an hour after leaving his home; *Held,* in an action against the city, by the administrator of the child, to recover damages for negligence, that, considering the tender years of the child, his inability to take care of himself, and the nature of the accident, the plaintiff was bound to show how the accident occurred, and to throw some light upon the causes which led the child to the vicinity of the well, and the condition of the opening into the well, and whether it was closed or not when the deceased came there.

That merely showing the existence of the well, with its covering, and the child being found in the water, was not sufficient to entitle the plaintiff to recover, or to put the city upon the defense.

The interest which the next of kin have in the life of a person negligently killed, under the acts of 1847 and 1849, is merely pecuniary. The personal wrong done to, or the suffering of the person killed have nothing to do with the damages. Nor should the anguish and grief of his parents enter into the estimate of the amount to be recovered.

Where a father brought an action to recover for the negligence of the defendant, in causing the death of his son, a child four years of age, and recovered a verdict for $1500; *Held* that the damages were unreasonable and excessive, and should have been merely nominal.

APPEAL from a judgment of the city court of Brooklyn. The facts are detailed in the opinion of the court.

*James J. Lowrie,* for the plaintiff.

*Henry Hayner,* for the defendant.

Lehman *v.* City of Brooklyn.

*By the Court,* Brown, J.   This action was most indifferently and inefficiently tried, for the examinations failed to bring out the facts upon which its determination must ultimately depend.

The plaintiff is the administrator of George Lehman, deceased, and the action is for negligence, whereby the plaintiff's intestate was deprived of his life, on the 5th May, 1856.   It appeared by the proof, that at the time of the alleged death there was a well within the line and upon the sidewalk of Division avenue, in the city of Brooklyn.   The mouth of the well being level with the grade of the sidewalk, which is flagged about two feet in or through the center, and the well being on the northeast side, two and a half or three feet from the flagging, and between that and the fence.   The diameter of the well was about five feet, its depth ten or twelve feet, with eight feet of water.   At the time of the accident there was a circular wood cover over the well, flat, and about five feet in diameter, so that it could be removed, with a square opening about the center.   This opening was also covered with a lid fastened with leather hinges, which could be opened or shut at pleasure.   This covering or lid was kept from passing into the well by the leather hinges fastened with nails upon the one side, and a cleet upon the opposite side. This cleet prevented the square lid or covering from falling through.   It also appeared that the plaintiff's intestate was last seen at the plaintiff's (his father's) house, about 9 o'clock on the morning of the 5th May, 1856, and at half past 9 he was found dead in this well.   He was a lad four years and one month old and resided with his father, in the immediate vicinity of the well.   The square lid or covering, which was about one and an half feet square, was found in the water with the body of the child.   It was also proved that Division avenue was a public street and thoroughfare, and had been for a long time.   This was the case on the part of the plaintiff when he closed his testimony and rested.   And thereupon the defendant moved that the complaint be dismissed, on ac-

count of the insufficiency of the proof to sustain it. The motion was denied, and the defendant excepted.

The legal principles upon which this action is to be determined are quite well settled, for the duty and obligation of the city to keep its streets and avenues in a safe and secure position for the passage of persons and vehicles is not open to any doubt. The gist of the action, however, is negligence, which must be made out and established by proof, and not left to be inferred from circumstances. The proof need not be direct and positive, by some one who witnessed the occurrence and saw how it happened; but it must be such as shall satisfy reasonable and well balanced minds that it resulted from the negligence of the defendant. It is not safe, I think, to say that because there was a well in the street, and the child was found drowned in its waters within half an hour after he was seen in health, the defendant's negligence is made out. This theory ignores a portion of the evidence, and overlooks a legal principle which forms a material element in determining the question. To entitle the plaintiff to recover, it must appear, affirmatively, that the accident resulted wholly from the negligence of the defendant, and that the negligence and improvidence of the plaintiff did not contribute to bring it about. The well had a covering sufficient to protect persons from falling into it; and if the covering was upon the well, which (in the absence of proof to the contrary) may be plainly inferred, then no negligence which could result in the death of the child was proved. The proof disclosed nothing of the condition of the well at the time of the accident; whether it was open or closed, or whether, when closed, the covering was sufficient security to passengers upon the street, does not appear. It did not show how the child came there; whether sent by its parents or straying away of its own will. It was four years of age, entirely incapable of taking care of itself. If sent from home by its parents, or if suffered by them to stray about the streets without a protector, it was gross carelessness, and contributed in no small

degree to the accident which put an end to its life. In *Hart-field* v. *Roper*, (21 *Wend.* 615,) a young child, of two years of age, suffered by its parents to run upon the highway, where it was run over and injured, was not permitted to recover, upon the ground that, being without discretion or the ability to take care of itself, by being upon the highway, it contributed to the act which injured it. In giving the opinion, the court say : " But at the tender age of two or three years, or even more, the infant cannot personally exercise that degree of discretion which becomes instinctive at an advanced age, and for which the law must make him responsible through others, if the doctrine of mutual care, between the parties using the road, is to be enforced in all cases." Considering the tender years of this infant, his inability to take care of himself, and the nature of the accident, the plaintiff was bound to show how the accident occurred, and to throw some light upon the causes which led the child to the vicinity of the well, and the condition of the opening into the well, and whether it was closed or not when the child came there. Merely showing the existence of the well, with the covering spoken of by the witnesses, and the child being found in the water, was not, in my judgment, sufficient to entitle the plaintiff to recover, or to put the city upon the defense.

There is another serious objection to the judgment. The damages given are excessive and unreasonable. The personal wrong done to, or the suffering of, the child, have nothing to do with the damages. Nor should the anguish and grief of his parents enter into the estimate of the amount to be recovered. The interest which the next of kin have in the life of a person negligently killed, is pecuniary. The purpose of the acts of 1847 and 1849 was to give to the widow and next of kin a pecuniary compensation for the loss they might suffer by the destruction of the life of a husband, parent, or other person upon whom they might be dependent, or the preservation of whose life was of any pecuniary value to them. The language of the act is express, that the jury are to " give such

Lehman *v.* City of Brooklyn.

damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to the wife and next of kin of the deceased," subject to the limitation as to the amount, mentioned in the statute. The money, when recovered, is to be distributed to the widow and next of kin, according to the statute for the distribution of personal property. In the present action the next of kin to whom compensation is to be made, for the pecuniary injury, is the father. The jury estimated this pecuniary injury at $1500 ; that is, that the plaintiff in this action was the pecuniary loser of $1500 by the accident. The child was four years and one month old when he died. For the next ten years, had he lived, it may safely be said that he would have been a burthen in place of a benefit, pecuniarily, to his parents. And for the next seven years after that, if educated to a profession or mercantile calling, or put to a trade, he would have done well—much better than the majority of lads—if he supported himself. During all this time he would be exposed to disease and death, and the other ills that beset human life in all its stages. The life of this little boy, however priceless may have been its value in other aspects, had no pecuniary value which the jury could justly estimate at $1500. If the plaintiff recovered at all, the damages should have been nominal. For these reasons I think the judgment should be reversed and a new trial granted, with costs to abide the event.

[DUTCHESS GENERAL TERM, May 9, 1859. *Lott, Emott* and *Brown,* Justices.]