MATHILDA FINK, Plaintiff in Error, *v.* MISSOURI FURNACE COMPANY, Defendant in Error.

### March 8, 1881.

1. The mere fact one works by the piece or job, and not by the day or week, is not conclusive as to whether he is a servant or an independent contractor.

2. In an action for damages against an employer for the negligence of an employee, any evidence tending to throw light on the question whether the former exercised control over the latter, is competent, where the employment is not such as establishes, as matter of law, the relation of master and servant.

3. One who owns land in a populous neighborhood is bound to use reasonable care not to leave exposed upon his premises any dangerous agency attractive to children.

4. Evidence that children resorted, in large numbers, to a sand-pit so excavated, in a populous neighborhood, as to be liable to cave in from time to time, and that two children were killed by the bank caving in, is competent, in an action for the death of one of the children, as tending to show that the owner ought reasonably to foresee that children would be attracted to the pit.

5. The question of contributory negligence is ordinarily a question for the jury.

6. Unless such a strong inference of contributory negligence on the part of the plaintiff or the injured party arises from the plaintiff's testimony that fair-minded men could not differ about it, it is error to take the case from the jury on that ground.

7. A child four years old cannot be guilty of contributory negligence.

Error to the St. Louis Circuit Court, Lindley, J.
*Reversed and remanded.*

Klein & Fisse, with O. G. Hess, for the plaintiff in error: A land-owner who has reason to know that dangerous agencies on his premises are attractive to children, is bound to use reasonable diligence to protect them against the danger; and if, as a result of his failure to exercise such care, a child, although trespassing at the time, suffers injury without being guilty of contributory negligence, the child or its representatives may maintain an action against him to recover damages. — *Stout* v. *Railroad Co.*, 2 Dill. 294; s. c. sub nom.; *Railroad Co.* v. *Stout*, 17 Wall. 657; *Keffe* v. *Railroad Co.*, 21 Minn. 207; *Kansas City R. Co.* v. *Fitzsimmons*, 22 Kan. 686; *Whirley* v. *Whitman*, 1 Head, 610; *Birge* v. *Gardiner*, 19 Conn. 507; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Frick* v. *Railroad Co.*, 5 Mo. App. 435; *Clark* v. *Chambers*, 3 Q. B. Div. 327–339; *Boland* v. *Railroad Co.*, 36 Mo. 484, 490. See also *Crafton* v. *Railroad Co.*, 55 Mo. 580. Whether in any given case the owner has exercised due care, is a question for the jury. — *Railroad Co.* v. *Stout*, 17 Wall. 657; *Lane* v. *Atlantic Works*, 107 Mass. 104; *Hydraulic Co.* v. *Orr*, 83 Pa. St. 332; *Mullaney* v. *Spence*, 15 Abb. Pr. (N. s.) 319; *Callahan* v. *Warne*, 40 Mo. 131–136; *Norton* v. *Ittner*, 56 Mo. 351. The court errs in taking the case from the jury unless the evidence clearly shows that the injury is attributable solely to the plaintiff's want of care. — *Morrissey* v. *Ferry Co.*, 43 Mo. 380; *O'Flaherty* v. *Railroad Co.*, 45 Mo. 70; *Smith* v. *Railroad Co.*, 61 Mo. 588; *Dale* v. *Railroad Co.*, 63 Mo. 455; *Frick* v. *Railroad Co.*, 5 Mo. App. 435; *Railroad Co.* v. *Long*, 75 Pa. St. 265. The relation

existing between Stevenson and the defendant was that of master and servant. — *Morgan* v. *Bowman*, 22 Mo. 538; *Darmstaedter* v. *Moynahan*, 27 Mich. 188.

HITCHCOCK, LUBKE & PLAYER, for the defendant in error: The child injured was a trespasser, and the plaintiff was not bound to enclose or fence the lot as a protection to such. — *Hughes* v. *Railroad Co.*, 66 Mo. 327; *Straub* v. *Soderer*, 53 Mo. 38; 1 Thomp. on Neg. 303, sect. 3; *Knight* v. *Albert*, 6 Pa. St. 472; *Hargreaves* v. *Deacon*, 25 Mich. 1 (per Graves, J.); *Sweeney* v. *Railroad Co.*, 10 Allen, 368, 372. The plaintiff was guilty of contributory negligence. — *O'Flaherty* v. *Railway Co.*, 45 Mo. 74; *Craig* v. *Sedalia*, 63 Mo. 420. Plaintiff having failed, either by allegation or proof, to show that the injury complained of resulted from any legal negligence on the part of defendant, under any view of the pleadings and evidence, it was the duty of the court below to withdraw the case from the jury. — *Langan* v. *Railway Co.*, 5 Mo. App. 315; *Wetjen* v. *Lead Co.*, 5 Mo. App. 598.

THOMPSON, J., delivered the opinion of the court.

This is an action to recover statutory damages from the defendant for its negligence resulting in the death of Charles Fink, the plaintiff's son, a child of tender years. Under appropriate pleadings, there was evidence tending to show, at the trial, that the defendant is a corporation, and owned and occupied the premises upon which the accident happened. The plaintiff is a widow, and has a family of small children depending upon her for support. She gains a livelihood by washing, scrubbing, whitewashing, and such other like work as she can get to do, and has no income except her earnings. On August 27, 1879, she went to the house of Mr. Williams, in Carondelet, to do some washing, taking with her her youngest child, the deceased, who was but four years old, there being no one at home with whom to leave him. Adjoining the lot on which Mr. Williams's house stands is

an unfenced lot of ground belonging to the defendant. The
streets surrounding this lot are well built up with dwelling-
houses ; these houses are occupied by families, and there are
many children in the neighborhood. For many years the
defendant has been engaged in excavating sand from this lot
of ground and removing it to the defendant's furnaces. On
the day of the accident two colored men, Stevenson and
Jones, were engaged in this work of digging and hauling
away sand.   Stevenson had been engaged in this digging and
hauling away sand from this lot for the defendant for seven or
eight years.   At this time he was hauling at a price of fifty-five
cents per load, and Jones, who was helping him, had no con-
nection with the company.   There was no stipulation with
Stevenson as to how he should do the digging.   In conse-
quence of this long-continued removal of the soil, there was
a deep pit, the bottom of which was two or three feet below
the grading of the surrounding streets.   At the time of the
accident, the outline of this excavation had assumed the
shape of a horseshoe, opening towards St. Denis Street.
The height of the bank around this pit varied with the in-
equalities of the ground, the highest point being six or eight
feet from Mr. Williams's lot, where the height was from
seven to ten feet.   Upon the sand which was thus being
excavated was superimposed a stratum of clay, or loam,
from two to four feet in thickness.   The men thus en-
gaged in excavating took the easiest way to accomplish their
purpose.   They dug into the pit, took out the sand from
beneath the superincumbent clay, or loam, and removed the
latter as it would fall into the pit, from time to time, of its
own weight.   It appears that when the defendant purchased
this property some years before, there was a fence around
this lot, which the defendant twice repaired, but for two
years prior to the accident there had been no fence around
it, except the one which Mr. Williams had erected along the
line of his own lot.   On the day of the accident the colored
men, Stevenson and Jones, were digging and hauling away

sand as usual.   They were excavating at the point where
the wall of the excavation was highest, and where it was but
six or eight feet from Williams's fence.   In so doing they
had, before the accident, dug a cave in the perpendicular
wall, three or four feet deep.   The plaintiff, as before stated,
was at Mr. Williams's house, washing, and the deceased was
with her.   He played around the yard during the forenoon.
At about a quarter past twelve she ate lunch, and gave him a
piece of bread and told him not to go away, that she could not
attend to him ; and he promised that he would not.   The last
she saw of him he was sitting just outside the fence with the
other children, eating his bread, at which time she resumed
her work.   Soon afterwards he was missed, and also a boy
of Mr. Williams's, about six years old.   A search revealed
the fact that the excavation had caved in, and the bodies of
the two boys were found lying near each other, with their
faces downward, and their heads from the pit, buried under
the mass of earth which had fallen, and near its outer edge.

Three errors are complained of by the plaintiff, which we
shall speak of separately.

1. The foreman of the defendant was permitted to tes-
tify — and properly, we think — against the plaintiff's objec-
tion, that Stevenson was hauling sand at so much per load.
This raised the question whether he was an independent con-
tractor or the servant of the defendant.   The same witness
having testified that Stevenson had quit hauling sand from
another lot owned by the defendant, the plaintiff asked by
whose orders he quit.   This question the court ruled out.
The plaintiff also asked the same witness whether, at the
time of the accident or at any previous time, the defendant
could have directed Stevenson to stop hauling from that
place.   This question the court also ruled out.   In these
rulings we think the court erred.   Whether the relation be-
tween the person sought to be charged for an alleged
wrong and the immediate actor by whom the alleged wrong
was done, was that of master and servant, or proprietor

and independent contractor, is frequently a question of fact for the jury, the solution of which depends upon a variety of circumstances. *Kimball* v. *Cushman*, 103 Mass. 194; *Crockett* v. *Calvert*, 8 Ind. 127; *Kellogg* v. *Payne*, 21 Iowa, 575; *Whatman* v. *Pearson*, L. R. 3 C. P. 422. Upon this question the contract between the defendant and the immediate actor must generally speak with conclusive force; but this is not so where, as in this case, the terms of the contract are not clearly shown, or where, so far as shown, they are not defined. In every case the conclusive test to be sought after, by which to determine whether or not the immediate actor was the servant of the defendant, is, whether the defendant reserved *control* over him as to the manner of doing the work. *Pawlet* v. *Railroad Co.*, 28 Vt. 297; *McGuire* v. *Grant*, 25 N. J. L. 357. The power to control implies the power to discharge for disobedience; and accordingly the power to *discharge* has frequently been regarded as the test by which to determine whether the relation of master and servant existed. *Dalyell* v. *Tyrer*, El. Bl. & El. 906; *Fenton* v. *Packet Co.*, 8 Ad. & E. 835; *Blake* v. *Ferris*, 5 N. Y. 48; *Michael* v. *Stanton*, 3 Hun, 462; *s. c.* 5 Thomp. & C. 634. A person who, skilled in a particular employment, engages with another to do a particular job of work for a round sum, reserving to himself the right to determine by what methods he shall accomplish the work, is regarded as an independent contractor, and not as the servant or agent of the other contracting party, in the sense which makes the latter responsible for any wrong he may commit in the doing of the work. *Morgan* v. *Bowman*, 22 Mo. 538. But the mere fact that a common laborer performs a particular job of work for an owner of land, upon his land, for a round sum, and not by the day, does not exempt the proprietor from liability to a stranger for an injury which may happen to the latter through the negligent manner in which the laborer has done the work. *Sadler* v. *Henlock*, 4 El. & Bl. 570.

For stronger reasons, where the proprietor contracts with a laborer to do a job, not for a round sum, but by the piece, — as, to fill an ice-house at so much per cord,— the same rule will apply. *Darmstaetter* v. *Moynahan*, 27 Mich. 188; *Burgess* v. *Gray*, 1 C. B. 578; *s. c.* 14 L. J. (C. P.) 184. See also *Brackett* v. *Lubke*, 4 Allen, 138. And that was this case, so far as developed by the evidence. The mere fact, without more, that Stevenson was working under a contract to haul the sand for fifty-five cents a load, did not conclusively determine whether he was the servant of the defendant or not, though we think it would have authorized the jury so to find. But other evidence was still wanted to throw light upon the question whether the defendant reserved control over him. Upon this point the facts which the plaintiff sought to elicit by the two questions above stated were pertinent, and the court erred in refusing to allow them to be answered.

2. While the general rule must be conceded that a proprietor of land is under no obligation to trespassers who are *sui juris* — able to take care of themselves — to keep his premises in a safe condition for their benefit (*Straub* v. *Soderer*, 53 Mo. 43), yet the law is too well settled to admit of question that such a proprietor is under the duty of using ordinary or reasonable care not to expose unguarded upon his premises any dangerous instrument, or agency, attractive to children, which is likely to kill or injure them when brought into contact with it. *Railroad Co.* v. *Stout*, 17 Wall. 657 (affirming *s. c.* 2 Dill. 202); *Keffe* v. *Railroad Co.*, 21 Minn. 207; *Birge* v. *Gardiner*, 19 Conn. 507; *Whirley* v. *Whiteman*, 1 Head, 610; *Hydraulic Co.* v. *Orr*, 83 Pa. St. 332. Nay, such a proprietor may not thus attract his neighbor's dog upon a dangerous instrument (*Townsend* v. *Wathen*, 9 East, 277), nor his cattle upon his railway track (*Crafton* v. *Railroad Co.*, 55 Mo. 580), whereby they are killed, without paying damages for them.

There is no doubt as to the general duty ; in nearly all cases the doubt and difficulty arise as to whether, under the circumstances, the defendant has failed in the performance of the duty through a want of that degree of care which a prudent man, having a due regard for his social obligations, would have exercised. Whether he has so failed must, in every case, depend upon the probability that the accident which did happen would have happened from what he did or left undone. Any fact which speaks upon this point, which tends to show that what the defendant did or left undone rendered the accident which did happen more or less probable, is relevant, and ought not to be excluded from the jury. Upon the question whether the proprietor of land who had caused to be excavated thereon a sand-pit, and and who continued the excavating of it in such a manner that it was liable to cave in from time to time, ought reasonably to foresee that neighboring children might be attracted to it and killed in it, no evidence which we can conceive of could speak with more force than evidence that children were in the habit of resorting to it in large numbers. Such evidence was offered by the plaintiff and excluded by the court. This, we think, was error. If authority were needed upon this point, it is found in *Railroad Co.* v. *Stout*, 17 Wall. 657, 662. Evidence of this nature was received in that case, and much stress was laid upon its importance in the opinion of the court, Mr. Justice Hunt saying: "In looking at the remoteness of the machine from inhabited dwellings, when it was proved to the jury that several boys from the hamlet were at play there on this occasion, and that they had been at play upon the turn-table on other occasions, and within the observation and to the knowledge of employees of the defendant, the jury were justified in believing that children would probably resort to it, and that the defendant should have anticipated that such would be the case."

3. When the plaintiff's evidence was in, the court in-

structed the jury that, under the pleadings and evidence, the plaintiff could not recover. In this we think the learned judge also erred. The motion of the defendant brought before him for consideration three questions : 1. Whether the defendants were under a duty either so to prosecute the work of excavating in such a manner as not to endanger children who might be attracted to it, or else to maintain such a fence or other safeguard as would keep them out of the lot. 2. Whether they were negligent in the performance of this duty ; which question involves the further question whether they were responsible for the negligence of Stevenson, if he was guilty of negligence in the premises. 3. Whether contributory negligence is imputable to the deceased or the plaintiff.

(1.) Upon the first question we are clear of doubt, upon principle and authority, that the defendant was under a duty either to prosecute the work of excavating in a different manner than by undermining, or else to maintain a fence or other safeguard against trespassing children. Persons who carry on a dangerous work in a neighborhood where there are many small children are fairly bound, we think, to take notice of the habits of small children. The managing agents of the defendant were bound to know that nothing is more attractive, or more tempting, to small children than an excavation in a sand bank, or a pile of loose sand in which they can play. They were bound to know that in a populous neighborhood where there were many small children, the work of excavating such a pit by undermining would be highly dangerous to them, unless some measures were taken to keep them away from it. And while it is true that no person is bound to take better care of his neighbor's children than his neighbor is bound to take of his own children ; while it is not negligence in one person not to anticipate and guard against the future negligence of another person (*Kellogg* v. *Railway Co.*, 26 Wis. 223 ; *Fox* v. *Sackett*, 10 Allen, 535 ; *Damour* v.

*Lyons*, 44 Iowa, 276 ; *Robinson* v. *Railroad Co.*, 48 Cal. 409 ; *Railroad Co.* v. *Terry*, 8 Ohio St. 570), yet in a neighborhood where there are many small children, a proprietor ought reasonably to anticipate that small children will, in spite of the exercise of due care on the part of their parents, frequently escape and run into danger.

(2.) If we examine the question, whether the defendant was guilty of a want of reasonable care in the discharge of this duty of excavating this sand-pit by excavating into the horizontal bank three or four feet, and then leaving it exposed to trespassing children during the interval between the time when the defendant's servant departed with one load and returned for another, we shall have no difficulty in answering the question upon principle. It was certainly a most dangerous dead-fall. It presented an appearance of solidity and permanency, such as would convey no suggestion of danger to the infantile mind till the superincumbent mass was upon him. If we look at the question in the light of analagous cases, we find that this case is much stronger for the plaintiff than several in the books which have been quoted as authority. Thus, in *Lynch* v. *Nurdin*, 1 Q.B. 29, the dangerous thing which the defendant's servant left exposed was a horse and cart in the streets of London. There was no evidence that the horse was not an ordinarily gentle one ; but the negligence consisted in leaving it exposed unguarded and unhitched. The plaintiff, a child of tender years, was injured by climbing upon the cart, and by the circumstance that another boy led the horse forward. It was held proper to put these facts to a jury as evidence of negligence. This case was decided in 1839. It has been greatly quoted as authority both in England and in this country, and has seldom been questioned. See, for a confirmation of this fact, the table of cases in Thomp. on Neg. ci, *sub nom.* "*Lynch* v. *Nurdin*." In the leading American case on the same subject — *Birge* v. *Gardiner*, 19 Conn. 507 — the dangerous thing was nothing more than

a heavy gate set up against a fence near some houses in which were eight or nine children who were in the habit of passing that way. The plaintiff, a child of tender years, took hold of this gate and shook it, and it fell on him. It was likewise held proper to put this case to a jury, the court saying : " This is not a case between faultless parties. The gross negligence of the defendant is here the cause of the accident, and he alone is responsible for the entire consequences of it, unless there has been fault on the plaintiff's part." This case certainly seems like a hard one. An owner of premises would scarcely be expected to foresee that a gate leaning against his fence afforded. anything which would be likely to attract young children to meddle with it. But this case has been frequently cited as authority, and, so far as we know, has never been questioned. Then there is the frequently quoted case of *Railroad Company* v. *Stout*, 17 Wall. 657 ; *s. c.* 2 Dill. 294. In that case a child was injured while playing with other children upon an unguarded and unfastened turn-table. Such a machine is certainly well calculated to attract and tempt children ; but this one was left so exposed in a small hamlet, where there were but a hundred or a hundred and fifty inhabitants, and the child which was injured lived three quarters of a mile away from it. It was held that this case was properly put to a jury, the court going so far as to say that proof that the particular accident did happen would have warranted an inference of negligence. The case of *Keffe* v. *Railroad Company*, where a similar ruling was made, was somewhat stronger for the plaintiff. The town was larger, and the dangerous machine was but a few rods from the home of the plaintiff. A still stronger case for the plaintiff was the case of *Kansas Railway Company* v. *Fitzsimmons*, 22 Kan. 686. Here the unguarded and unfastened turn-table was left exposed near the populous city of Leavenworth, and the boy who was injured was of some discretion, having been sent on the particular day in

search of his father's cow. But even in these cases the machine left exposed was likely to convey to the minds of children some suggestion of danger. The same may be said of *Whirley* v. *Whitman*, 1 Head, 610, where the dangerous thing consisted of two cog-wheels geared together outside the wall of a paper-mill, about twenty inches from the ground, and in an exposed place, unenclosed, about twenty feet from the street. This machine, though highly dangerous when in motion, conveyed to the mind of the child a clear warning of danger. All these cases were held to present questions which were proper to go to a jury. In *Hagan's Petition*, 5 Dill. 96, the defect in the defendant's premises which caused the injury, was the wall of the St. Louis tunnel, unguarded by a railing, at a point on its southern terminus where it intersected Eighth Street. The street was little travelled at that point. The plaintiff, a boy four years old, had strayed two blocks from home and fell into the tunnel, not while using the highway as a highway, but while playing with other boys upon the stone coping of the tunnel wall. This case was not tried by a jury, but it was held a case for damages.

The recent case of *Hydraulic Company* v. *Orr*, 83 Pa. St. 332, was somewhat similar to those preceding. The place of the injury was a private alley-way of a manufacturing establishment in a populous city, Philadelphia. The thing which caused it was the platform of an elevator weighing about eight hundred pounds, which when not in use was leaned up against the wall, at such an inclination that it sometimes fell down of its own weight. The gates of the alley-way having been left open, a child six years old, with several other companions, strayed into the alley-way, and while at play under the platform, it fell on them, injuring all of them, and the child of the plaintiff so badly that he died. It was held that this case was properly put to the jury. In giving the judgment of the court in this case, Agnew, J., used the following strong language : " Now, can it be right-

eously said that the owner of such a dangerous trap, held by no fastening, so liable to drop so near a public thoroughfare, so often open and exposed to the entries of persons on business, by accident, or from curiosity, owes no duty to those who will be probably there? The common feeling of mankind, as well as the maxim, *sic utere tuo, ut alienum non lædas,* must say this cannot be true, — that this spot is not so private and secluded as that a man may keep dangerous pits or dead-falls there without a breach of duty to society. On the contrary, the mind, impelled by the instincts of the heart, sees at once that in such a place and under these circumstances he had good reason to expect that one day or other some one, probably a thoughtless boy in the buoyancy of play, would be led there and injury would follow, especially, too, when prompted by knowledge that a fastening was needed. Perhaps the best monitor in such a case is the conscience of one who feels in his dreadful recollection the crushing sense that he had left such an engine of ill to take the life of an innocent child. Such, too, is the humanity of the law, that one may not justifiably, or even excusably, place a dangerous pit-fall, a wolf-trap, or a spring-gun purposely to catch and injure even wilful trespassers poaching upon his grounds. The common feeling of mankind, guided by the second branch of the great law of love, and the common sense of jurors must be left, in such a case, to pronounce upon the facts. We see no error, therefore, in submitting this case on its facts to the verdict of a jury." Even this case was less strong for the plaintiff than the case at bar, since it lacked the element that the object which did the injury was specially tempting or attractive to children; while the heavy platform was not more likely to fall from its position against the wall than a superincumbent mass of earth in the excavated sand-pit.

In the argument it was insisted by counsel for the defendant, that the children were not in the pit when the earth fell, but on top, at the edge of the excavation. We have

only to say concerning this, that the evidence is quite consistent with the conclusion that they were in the pit when the earth commenced to fall, and turning to run, were caught by the descending mass, thrown upon their faces, and thus buried. But whether they were on the top of the pit or in the pit was purely an inference of fact to be drawn, not by the court, but by the jury.

But the foregoing principles may not operate to charge the defendant in the present case, if the defendant's contention is true, that the colored man Stevenson, who left the sand-pit in this dangerous condition, was an independent contractor, not subject to the defendant's control as to the manner of prosecuting the work of excavating. If the peremptory instruction given by the learned judge can be supported on this ground, then the plaintiff is entitled to fall back on the error which we have already pointed out, of excluding testimony which she offered tending to show that Stevenson was in fact subject to the defendant's control, and in either case she is entitled to a reversal of the judgment. But we do not wish to be understood as holding that the testimony which was admitted as to the relation between the defendant and Stevenson, was not sufficient to warrant the jury in finding that that relation was the relation of master and servant. On the contrary, we are of opinion, in view of the cases on this point which we have already cited, that where it is shown that a common laborer is working for the proprietor upon his land at an employment which does not involve any special art or skill, and the precise relation between him and the proprietor is not shown, the relation between them is presumptively that of master and servant, and that this presumption is not conclusively rebutted by the circumstance that he was not working by the day, week, or month, but by the piece, or even by the job. We therefore think that, in the state of the evidence, the learned judge could not have rightfully withdrawn the case from the jury upon this ground.

(3.) The cases are less frequent where the judge is entitled to give a peremptory instruction for the defendant on the ground that there is contributory negligence on the part of the plaintiff, or person injured, than on the ground that there is no evidence of negligence on the part of the defendant. The reason is plain. It is always competent for the judge to say that there is no evidence tending to establish a given fact, but to find affirmatively the existence of a given fact is always the office of the jury. When, however, an inference arises out of the plaintiff's evidence so strong that fair-minded men could not differ about it, that the injury complained of was produced, in whole or in part, by the negligence of the plaintiff, or person injured, the judge is authorized so to declare, and to direct a nonsuit, or give a peremptory instruction for the defendant. *Callahan* v. *Warne*, 40 Mo. 131; *Norton* v. *Ittner*, 56 Mo. 351. But this was not such a case. The deceased was of such tender years that the law conclusively presumes him incapable of discretion, and refuses to impute to him contributory negligence. *Chicago* v. *Starr*, 42 Ill. 174; *Meeks* v. *Railroad Co.*, 52 Cal. 602; *McLain* v. *Van Zant*, 7 Jones & Sp. 347; *Railroad Co.* v. *Mahoney*, 57 Pa. St. 187; *Lehman* v. *Brooklyn*, 29 Barb. 234; *Railroad Co.* v. *Bowen*, 40 Ind. 545; *s. c.* 49 Ind. 154; *McGarry* v. *Loomis*, 63 N. Y. 104; *Railroad Co.* v. *Caldwell*, 74 Pa. St. 421; *Railroad Co.* v. *Huffman*, 28 Ind. 287. If, however, the plaintiff, who is here suing in her own right, was guilty of contributory negligence in allowing the child to escape, and if the inference of such negligence was unavoidable, the peremptory instruction was properly given on that ground. But there were no facts disclosed by the evidence sufficient to warrant the court in drawing such a conclusion. There was, however, evidence which would have warranted the court in submitting the question of contributory negligence, under proper instructions, to the jury. That the question of contributory negligence is one for the jury, and not for

the court, has been held in a number of cases quite analogous to this. *Isabel* v. *Railroad Co.*, 60 Mo. 475, 483; *Mangam* v. *Railroad Co.*, 38 N. Y. 455; *Fallon* v. *Railroad Co.*, 64 N. Y. 13; *Prendegast* v. *Railroad Co.*, 58 N. Y. 652; *Bahrenburgh* v. *Railroad Co.*, 56 N. Y. 652; *Railroad Co.* v. *Bumstead*, 48 Ill. 221; *Railroad Co.* v. *Pearson*, 72 Pa. St. 169; *Kay* v. *Railroad Co.*, 65 Pa. St. 269. See also *O'Flaherty* v. *Railroad Co.*, 45 Mo. 70, 74.

Reversed and remanded. The other judges concur.