Plaintiff in error was defendant below, and defendant in error was plaintiff below.
*82 The action was for wrongful death. The petition, in substance, charged the defendant with operating a summer resort called Coney Island, and with carrying on a pony track in connection therewith. It further charged that Joseph Mitsch, Jr., a boy eleven years old, on or about the 30th day of August, 1899, hired one of its animals; that same was wild, vicious and uncontrollable; that the boy was placed upon said animal; that he became alarmed by its actions, begged to be taken off, which defendants failed to do; that, on the contrary, they struck said animal a vicious blow with a whip, whereupon the animal threw said boy; that his feet caught in the saddle, and that he was dragged around the track, and suffered injuries from which he died. Plaintiff charged that the death was due to the wrongful act, carelessness and neglect of the defendants, their agents and servants; that he left certain next of kin, on whose behalf the action was brought.
The answer of the defendants was a general denial.
1. The plaintiff in error assigns as error the refusal of the court to give special charges Nos. 4, 5, 6 and 7; and also assigns as error the fact that the court in its general charge instructed the jury that the defendant was liable for the negligence of any one connected with the establishment (see the court’s general charge, pp. 80, 81, 86, 87, 89, Record).
The special charges are based upon the theory, that as the pony track was let by the Coney Island Co. to an independent contractor, plaintiff in error was not liable under the petition, which averred negligence in defendants’ agents and servants. Even if the defendant company let the privilege of the pony track to Mr. Keefe, and retained no control over it save a mere police supervision, as claimed by plaintiff in error, it could not shift responsibility under the facts in this case. It seems the court below tried the case upon the theory that it was fairly governed by the rule laid down in Covington & Cincinnati Bridge Co. v. Steinbock, & Patrick, 61 O. S., 215. We are of opinion that this view of the case was warranted by the facts. The first syllabus of that case is as follows:
“Where danger to others is likely to attend the doing of certain work unless care is observed, the person having it to do is *83 under a .duty to see that it is done' with reasonable care, and can not by the employment of an independent contractor relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants.”
At page 222 the court says:
“That -the rule that a person letting out work is not liable for injuries to others is subject to important exceptions. One of these is, where from the nature and character of the work the employer is under a duty to others to see that it is carefully performed.”
And at page 223 the court further says:
“The weight of reason and authority is to the effect, that where a party is under a duty to the public, or a third person, to see that a work he is about to do, or have done, is carefully performed, so as to avoid injury to others, he can not by letting it to a contractor avoid his liability, in ease it is negligently done, to the injury of another.”
We think, a pony track from its very nature is pre-eminently a “work” requiring careful performance, so as to avoid injuring those that come upon the track. Its patrons, as a rule, are little children, the invited guests of those who operate the pony track in connection with public resorts, such as was the defendant’s. It is a means of entertainment provided for the little ones in particular, and we can conceive of nothing from which more mischievous consequences could arise (as was demonstrated by the facts in the case- before us) than a pony track, unless precautionary measures are taken as to the selection of the animals, the servants having them under their control and management, and as to the arrangements generally. The law imposed on defendant company the duty to exercise reasonable care to see that these precautionary measures were adopted, .and it was a duty-the company could not shift or delegate to another (Bridge Co. v. Steinbock & Patrick, 61 O. S., 230; Railroad v. Morey, 47 O. S., 207; Hawver v. Whalen, 49 O. S., 80). The rule that a person who invites the public to his resort must see that his premises are reasonably safe, and must exercise ordinary prudence and care to render them safe, is set out *84 in Cooley on Torts, 2d Ed., 718. And notwithstanding the fact that the act causing the injury is attributable to the independent contractor the proprietor of a public resort still owes this duty to his guests (See Richmond v. Moore, 94 Va., 493; Hart v. Washington Park Club, 157 Ill., 9; Hallyburton v. Burke County Fair Association, 118 N. C., 526; Conradt v. Clauve, 93 Ind., 476).
The plaintiff in error argues that the ratio decidendi of these cases was a failure on the part of the proprietor to keep the premises safe; and that as there was no allegation in plaintiff’s petition, or proof, that these premises were unsafe, or that Keefe, the contractor, was not a competent or careful person, these cases are not analogous. True, there is no allegation, in haec verba., that the premises were unsafe, or that the manager of the track was an incompetent person; still it seems to us that the allegations that the animal was vicious, or that the servants operating the track were careless or negligent, sufficiently charges that ordinary care was not exercised in carrying on this work.
In Conradt v. Clauve, 93 Ind., 476, a portion of the fair grounds was set apart for target practice with a gun—a deadly weapon. Plaintiff had no notice of it, and he hitched his horse where, as a result, it was ¿hot and killed; and the court held, that although those engaged in the shooting were not strictly servants of defendants, yet they were acting under their license and permission, and bore such a relation to them as to make defendants liable for not properly controlling the exhibition. The same principle is to be applied 'here. In the case cited the plaintiff came to the fair grounds without notice of the danger, and the work, from its very character, was one, namely, the use of a deadly weapon, which the defendant ought to have controlled, or in regard to which proper precautionary measures ought to have been taken. The pony track, with balky, or uncontrollable, or vicious animals, or careless operators, was equally liable to become a thing of danger to those patronizing it. Under such circumstances it was necessary for defendant to take precautionary measures to control the pony track, as he would be required to do had there been target prac *85 tice upon his grounds (See, also, Thompson v. Lowell, Lawrence & Haverhill Railroad Co., 170 Mass., 577).
There is still another reason why the charge of the court was not prejudicial, or the refusal of the court to give the special charges asked, error. The case below was, as we have already said, tried upon the theory that Keefe, the operator of the pony track, was an independent contractor, .and that the case fell within the exception recognized under Bridge Co. v. Steinbock & Patrick. By operation of law the defendant was charged with control of the track, and It devolved upon him to exercise the care implied by that control. But the record fairly discloses that as a matter of fact the defendant retained control of the track, and not, as claimed by plaintiff in error, a mere police supervision. The testimony of the two Keefes, indeed the testimony of Mr. Paxton himself, the owner or manager of the Coney Island Co., shows that this control over the track was not parted with. At page 78 of the record, Mr. Paxton says, “I exercised a general supervision over the whole place.” No matter what the arrangement was as to the furnishing of the ponies and the men to operate the track, or as to the division of the profits, the Coney Island Co. owned the track itself (F. Keefe, record, page 11), and it built the fence around it (G. Keefe, record, page 21). It was operated subject to the Coney Island Co.’s rules “in every respect.” The company reserved the right to instruct as to the ponies, and if it objected the contractor had to taire them off. Keefe had the management subject to the instructions of the general manager of the Coney Island Co. (see record, pages 5, 6, 12, 13, 11, 15, 16, 18, 19, 20, 21, 26, 27). Even Mr. Patton himself, who was the general manager of the company, says:
“The pony track was a part of our entertainment” (record, p. 76). “Q. If you had any doubts ponies were not safe you would make them take them off the track? A. Yes; if I thought so, or that they were overworked, or something of that kind” (record, p. 77).
Tie also says that he exercised a general supervision of the whole place (record, p. 78), and it was advertised to the public generally (record, p. 78).
*86 Control over the work having been therefore retained and not parted with (ordinarily control is parted with where there is an independent contractor), it would make no difference whether the arrangement with Keefe was that of partner or agent or whether Keefe was merely acting under defendant’s license and permission, the relation was such that the defendant would still be liable under the petition for the negligence of those operating this track.
2. It is assigned as error, fatal to the judgment, that defendant in error failed to prove his appointment as administrator. The answer was a general denial, and it was claimed by plaintiff in error that the representative capacity of plaintiff is a material and traversable fact, and was put in issue by defendant’s answer. This would be true in cases of this character in states where damages arising from wrongful death survive and become a part of the.estate of the deceased, and are inherited from the estate by the named beneficiaries as heirs. But such is not the case in Ohio, therefore the authorities cited by plaintiff in error are not in point. The personal representative of a deceased who brings an action under our statutes for wrongful death is a mere nominal party (Wolf, Admr., v. The Lake Erie & Western Railroad Co., 55 O. S., 517). A general denial does not traverse the representative capacity of plaintiff. Objection to his bringing the suit must be taken by demurrer, as for want of legal capacity to sue, or by special denial. Any objection must, therefore, be taken as waived.
3. Exception was also taken to the court’s charge as to the measure of damage, but we think the law was fairly stated under Grotenkemper v. Harris, 25 O. S., 510; Street Railroad v. Altemeier, 60 O. S., 10.
4. The fact of the death of the boy, and the proximate cause thereof being admitted, it is urged that the court erred in admitting testimony as to the character of the injuries and the condition of the body after the accident. The objection was made (see record, p. 33) after part of the injuries had already been described to the jury. The court overruled the objection, and some further description as to the injuries (see record, p. 34) was permitted, on the ground that it was part of the res *87 gesta. It will be noticed that one of the averments in plaintiff’s petition is to the effect that the hoy was “dragged clear around the track.” It is urged that the injuries sustained by the boy are the best proof of this particular allegation. Of course, there is always a danger that a jury may be prejudiced by proof of distressing injuries. Still, if that proof is necessary, we do -not see why a party should be deprived of it. Speaking of unfair prejudice to civil defendants in personal injury cases, because of the exhibition of corporeal injuries by one suing for compensation, Wigmore in his recent work says:
“No doubt there is in such cases a constant tendency to render verdicts against defendants regardless of proved culpability ; no doubt the danger is of greater frequency here than in the preceding class of cases (unfair prejudice to accused persons); and no doubt the trial court has a discretion, which it should firmly exercise, to prevent the abuse of such a mode of proof, but it seems too rigorous to forbid a party to prove his ease by the clearest evidence, and a jury which through violent prejudice would not.be restrained by the court’s instruction would probably give way to its prejudice even without this evidence” (Wigmore on Evidence,- Yol. II, Section 1158.)
In Lehman v. City of Brooklyn, 29 Barb., 234, to which we are cited by plaintiff in error, the court said, at page 237:
. “There is another serious objection to the judgment. The damages are excessive and unreasonable. The personal wrong .done to, or the suffering of the child, have nothing to do with the damages, nor should the anguish and grief of the parents enter into the estimate of the amount to be recovered. The interest which the next of kin have is pecuniary.”
In the case under consideration the court (see p. 92, record) in his general charge to the jury cautioned it that the facts must be carefully considered, and in an unprejudiced way, and no matter how distressing the circumstances, if they did not impute negligence, the verdict must be for the defendant. And when the court came to charge the jury on the measure of damages the jury was distinctly told that recovery could only be had for the pecuniary injury to the next of kin, and that no *88 damages could be awarded for bereavement, mental suffering or as a solace. Under these conditions we do not think that the plaintiff in error was prejudiced, and we believe the court fairly stated the law.
John B. Schindel and Robert Ramsey, for plaintiff in error.
Shay <& Cogan, for defendant in error.
Upon further investigating the record we are of opinion that the judgment below should be affirmed, with costs.