Nov. Term, 1856.

CROCKETT v. CALVERT.

## CROCKETT *v.* CALVERT.

Where *A.* hired his wagon, team and teamster to *B.*, and during the bailment the team ran away and ran against *C's* horse, injuring him so that he died,—*Held*, that the teamster was the servant of the bailor, and not of the bailee, and that the bailor, owning, furnishing and controlling the motive power, was liable for the injury.

Suit before a justice of the peace. Verdict for the plaintiff for 100 dollars, and judgment accordingly. Below and after the judgment, but above and before the justice's signature and seal, the plaintiff entered a remittitur of "25 dollars of the above judgment." The defendant appealed to the Circuit Court, where judgment was rendered for 80 dollars. *Held*, that this was such a reduction of the judgment of the justice as, under the statute, entitled the defendant to costs.

Nov. Term,
1856.

CROCKETT
v.
CALVERT.

*Held*, also, that, to have brought himself within the statute, the plaintiff should have remitted 25 dollars of the verdict, and let judgment be rendered for the residue.

Where parties appeared, proceeded to trial before a jury and examined a witness; and the defendant, to save time, admitted certain allegations of the complaint, not amounting to an admission of the plaintiff's right to recover; and judgment was rendered upon the verdict of the jury—*held*, that judgment was not confessed.

*Thursday,
November* 27.

APPEAL from the *St. Joseph* Circuit Court.

STUART, J.—*Calvert* sued *Crockett* before a justice of the peace for injuring his horse. The complaint alleges that *Crockett* was the owner of a team and lumber wagon, which he knowingly and negligently permitted his servant to drive about the streets and highways with insufficient harness, in consequence of which *Crockett's* horses ran away with the wagon, and in their progress ran against *Calvert's* horse of the value of 100 dollars, and so injured him that he died—claiming damages to the value of the horse.

The cause was submitted to a jury. Verdict in favor of *Calvert* for 100 dollars, and judgment accordingly. After the rendition of judgment, and above and before the justice's official signature and seal, is a remittitur of "25 dollars of the above judgment."

*Crockett* appealed to the Circuit Court. There the case was again submitted to a jury. Verdict and judgment for *Calvert* for 80 dollars. At the proper time a motion for a new trial was interposed and overruled. *Crockett* appeals to this Court, setting out the evidence.

We will briefly notice the several points made in error.

1. It is urged that the suit is brought against the wrong party. It appears that one *Loomis* had hired the team and teamster for that day on which the accident happened. It is said the driver was the servant of *Loomis*, and that he and not *Crockett* was liable; and 40 Engl. C. L. R. 192, and 35 *id*. 342 are cited.

It is sufficient to say that these cases are not in point. The principal question in this case is one of fact, unencumbered by any instructions of the Court, viz., whether

the relation of master and servant did, at, &c., exist be-
tween *Crockett* and the driver of the team. The jury
specially find that the team and driver were in the em-
ploy of *Crockett* at the time of the. accident; and we
think correctly.

The defect of the harness was in the reins, which
gave way in several places in attempting to control the
horses. It is very clear that when *Loomis* hired the
team to haul manure for the day, it was to be a team
properly equipped for that purpose. Surely it could not
be the duty of *Loomis* to pay the hire and provide for
their proper equipment besides. That duty devolved
on *Crockett* the bailor: the motive power was owned,
furnished, and controlled by *Crockett*, the driver was his
servant and not the servant of *Loomis*. In such case
the bailor is the party liable and not the bailee. Story
on Agency, ss. 452, 453. In the case of *Laugher* v.
*Forister*, 5 Barn. and Cress. 578, the owner of a carriage
hired a team and driver, through whose careless driving.
the horse of the plaintiff was injured. The Court of
King's Bench was equally divided whether the owner
of the carriage or the bailor of the horses and driver
was liable. But the liability of the latter is now well
settled. 6 M. and W. 499 *et infra*. *Crockett*, the owner
of both team and wagon controlled by his servant, is,
therefore, clearly the party liable.

2. The second point made here is that the jury were
required in the Circuit Court to find a special verdict,
which they failed to do. It is a sufficient answer to say
that no such requirement appears in the record. Nor
was this objection made in the Court below. Besides
the verdict is special as to the relation of master and
servant. As the record stands, we must, if we pre-
sume at all, presume that the Court directed the jury to
find a special verdict on that point alone. 2 R. S. p.
114, s. 336.

3. The third objection urged, relates to the costs. It
is insisted that the judgment before the justice being
reduced, the appellant, *Crockett*, was entitled to costs.

Nov. Term,
1856.
CROCKETT
v.
CALVERT.

Such is the statute, 2 R. S. p. 464, s. 70, if it be admitted, as assumed, that the judgment was reduced 5 dollars. Was it so reduced? is the question.

The judgment was in terms for 100 dollars. Before it was signed, but after it was entered by the justice the plaintiff remitted 25 dollars. The recovery in the Circuit Court was 80 dollars. Was this reducing the judgment, rendered in the Court below, 5 dollars. We think it was, taking as our guide the plain language of the statute. The statute reads: "If either party against whom judgment has been rendered, appeal and reduce the judgment against him 5 dollars or more, he shall recover costs, &c." 2 R. S. p. 464, s. 70. Here the judgment was rendered for 100 dollars; for the remittitur is "of the above judgment." To have brought himself within the statute, *Calvert* should have remitted 25 dollars of the verdict, and let judgment be rendered for the residue. (1)

If this construction be thought strict, it should be remembered that the point is pressed upon the Court; and in deciding it we are not deducing the best rule from conflicting adjudications; nor are we bound to show that statutory provisions are, in each instance, the very best that could be devised. We are simply giving construction to a statute, according to the rules which the statute itself prescribes. Among the rules of construction it is provided that technical words and phrases shall be understood according to their technical import. Here a judgment rendered means a judgment rendered. It is technical language. A phraseology so well settled, and so clearly defining judicial action, we are not at liberty to modify or evade. Courts have enough of conflicting and obscure enactments to deal with, without seeking to explain away technically accurate terms. When happily precise language is used, it is the manifest duty of the courts to let it expound itself—giving to the party whose good fortune or superior vigilance has entitled him to it, the full benefit of its accuracy. In the case at bar it is but a contest of

vigilance. It would be difficult to show the good sense or impartial justice of bending the statute to serve the party who may have slumbered over or mistaken his rights. The language of the act is in such cases the best exponent of the legislative will. When a statute is loosely or obscurely expressed, it is a great misfortune; for then, legislation is transferred to the bench, and the officer whose sole duty it should be to expound the law is under the strongest temptation to make the law. Conflicting provisions, as in *Spencer* v. *The State*, 5 Ind. R. 41; obscurity of language, as in *Murphy* v. *Barlow*, 5 Ind. R. 230; or a controlling public policy, as in *M'Intire* v. *The State*, 5 Blackf. 384, constrain the Courts to a species of legislation, whatever line of decision may be adopted. Here there is no conflicting statute, no obscurity of language, no controlling public policy. The will of the legislature is clearly expressed. It is not ours to mould it into what we might deem a wiser provision; but to declare and apply it as it is. The case is trivial in itself; but it is in such cases that principles can be more fully investigated and safely settled.

It is urged by the appellee that *Crockett* having admitted certain facts before the justice, the judgment was by confession, and he had no right to appeal under the statute. 2 R. S. p. 461. If such were the fact, the objection, not being made in the Circuit Court, would come too late in this Court. *Calvert* should have moved in the Circuit Court to dismiss the appeal for that cause.

But this was not a confessed judgment. The parties appeared and proceeded to trial before a jury and examined a witness. It is then stated that to save time, the defendant admitted that the horses ran away with the wagon, and against the plaintiff's horse, causing his death as charged in the complaint. This was no confession of judgment. The admission of these facts did not admit the plaintiff's right to recover. The question of negligence, and the relation of master and servant, as between the defendant and the driver was yet to be determined by the jury. Accordingly the judgment

Nov. Term, 1856.

was not entered by confession before the justice, as prescribed by the statute, 2 R. S. 461, but upon the verdict of the jury.

*Per Curiam.*—The judgment on the verdict in the the Circuit Court is affirmed; but as to the costs, reversed; and the Circuit Court is directed to render a judgment for costs for the defendant.

*A. G. Deavitt,* for the appellant.

*J. A. Liston* and *J. W. Gordon,* for the appellee.

(1) Counsel for the appellant cited on this point, *Lambert* v. *Blackman,* 1 Blackf. 59; *Coldern* v. *Miller, id.* 296; *Phillips* v. *Nicholas,* 3 *id.* 133, and note.