# Keystone Bridge Company *versus* Newberry.

# Same *versus* Kennedy.

1. To constitute fellow servants the employees need not at the same time be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work and performing duties and services for the same general purpose. The rule is the same, although the one injured may be inferior in grade, and is subject to the direction and control of the superior whose act caused the injury, provided they are both co-operating to effect the same common object.

2. If a gang-boss has no general power of control, but acts as foreman of workmen engaged and furnished to him by the superintendent of a company, whose orders he is bound to obey, he is not such a representative of the company as that it would be liable for his acts of negligence.

3. Where there is no evidence of the knowledge of the company of the want of capacity in such a gang-boss, in an action by a servant against the company, it is error to submit the question of negligence to the jury.

4. Lehigh Valley Coal Co. v. Jones, 5 Norris 432, and Delaware and Hudson Canal Co. v. Carroll, 8 Id. 374, followed.

November 11th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1880, No. 186 and 187.

These were actions on the case brought by Sidney Newberry and Sanford M. Kennedy, against the Keystone Bridge Company, to recover damages for injuries resulting from the alleged negligence of the defendant. The material facts will be found stated in the opinion of this court.

The trial was before Kirkpatrick, A. L. J.

The verdict in the Newberry case was for plaintiff for $2000, and in the Kennedy case for $4000. After judgment, defendant took this writ and alleged that the court below erred: 1. In their answer to the first point of defendant.

The law presumes the master did his duty, and to entitle plaintiffs to recover, the burden is on them to show : (1.) Negligence on the part of the defendant company or its chief repre-

[Keystone Bridge Co. *v.* Newberry.]

sentative. (2.) That the injury complained of was the result of such neglect. Ans. "Affirmed, saving and excepting the term 'chief' representative. This, we are of the opinion, is too broad. The expression is calculated to mislead, if affirmed without qualification. The party guilty of negligence, however, must be other than the fellow workman or servant. He must, for the time and occasion, represent and stand for the company; be their representative; having the entire and exclusive management of the work, otherwise the company would not be responsible for his negligence and misfeasance. If the jury, however, find from the evidence that he was their representative, even without being one of their chief representatives, then the company would be liable."

2. In their answer to the second point of defendant.

That the evidence fails to disclose either of said propositions, and the verdict must therefore be for the defendant. Ans. "Refused. We leave the jury to discover and determine from all the evidence in the case, further instructing them that the burden of establishing both propositions is upon the plaintiffs, all the presumptions being in favor of the defendant. These presumptions the plaintiff must overcome by evidence satisfactory to the jury."

3. In their answer to the third point of defendant.

Under the evidence in the case, William Wymond was not such an officer in defendant company for whose act of negligence the company can be held responsible. Ans. "Refused. We leave this to the jury from all the evidence, having, in our general instructions, and in answer to the plaintiff's second and defendants third points, shown what sort of a representative of the company he must be found by the jury to be."

4. In their answer to the fourth point of the defendant.

There is no evidence of Wymond's incompetency or unskilfulness, and no evidence of any knowledge on the part of the company of any incompetency or unskilfulness of Wymond, and the verdict must therefore be for the defendant. Ans. "Refused. This also we leave the jury to discover and determine."

5. In their answer to the fifth point of defendant.

That even though the jury should find that Wymond was unskilful or incompetent, then the verdict should be for the defendant, because there is no evidence that the company knew of such unskilfulness or incompetency. "Refused. Even if the defendant company was guilty of negligence, yet if the plaintiffs, by any act of negligence, aided or assisted in bringing about the accident, they cannot recover."

*S. Schoyer* and *West McMurray*, for plaintiff in error.—By discriminating against the phrase "chief representative," the court admits, under its definition, a large class of persons for whom employers are liable, who have been held by this court and other

[Keystone Bridge Co. v. Newberry.]

courts as fellow employees: Caldwell v. Brown, 3 P. F. Smith 456; Gilman v. The Eastern Railroad Corporation, 10 Allen 233; Wright v. N. Y. C. Railroad Co., 25 N. Y. 565; Morgan v. The Vale of Neath Railway Co., L. J. 35 Q. B. 23; Weger v. P. Railroad Co., 5 P. F. Smith 463; Lehigh Valley Coal Co. v. Jones, 5 Norris 433; Delaware & Hudson Canal Co. v. Carroll, 8 Id. 374.

Wymond was clothed with no powers of engaging and discharging workmen and laborers at pleasure. He was nowhere designated as the agent of the company. He had no general power of control. His duties were confined to special matters. That he happened for the time being to be the boss of a gang of men, and thereby differing from the laborers, those who were injured, does not matter. He was in an inferior position: Wilson v. Merry, L. R., 1 Scotch Appeals 1597; Hand v. Vermont & Canada Railroad Co., 32 Vt. 473; Howells et al. v. The Landore Siemens Steel Co., L. R., 10 Q. B. 62.

These cases differ in every aspect of the case from Patterson v. Pittsburgh & Connellsville Railroad Co., 26 P. F. Smith 392, referred to by the learned judge below in his charge. It was not machinery furnished by the company for the use of its workmen, but a temporary contrivance for a temporary purpose, made by a fellow workman in the line of his duty, of such material and strength as he thought sufficient, without the knowledge or dictation of his superior, and without complaint made to that superior, Wymond having no general power or control, no power to hire or discharge, and whose grade was but slightly higher than that of the men in his gang, and used by the workmen of their own volition, without direction and without control as to what and how many planks they should use.

*Thos. M. Marshall*, for defendant in error.—Mullan v. Steamship Co., 28 P. F. Smith 25, rules this case.

The fact whether Wymond did or did not employ the men is of no importance. The company voluntarily furnished the men to work under the orders of an incompetent master; to receive and obey the orders of an incompetent master. As said by this court in regard to an employee: "His primary duty is obedience, and if, in the discharge of that duty he is damaged, it is but meet he should be recompensed." Patterson v. Railroad Co., 26 P. F. Smith 393. This corporation could only act through its agents. It chooses to employ Wymond for the performance of a special work; it details men from their ordinary employment in the works; their duty is obedience in obeying an incompetent agent, the corporation cannot claim that they were fellow servants. The company having undertaken to perform a work, they were under obligation to furnish a fit person as master to the men: a person who understood the business committed to his government. They were bound to furnish

[Keystone Bridge Co. *v.* Newberry.]

all suitable instrumentalities to the performance of the work whether foreman, men or material; failing in either duty, it was negligence.

Mr. Justice GREEN delivered the opinion of the court, January 3d 1881.

Practically these cases, as they come before us, turn upon two questions: 1. Was Wymond such an officer of the defendant corporation as that it would be responsible for his act of negligence? And 2. Is there any evidence of Wymond's incompetency and unskilfulness, and that the company had knowledge of it? The learned judge of the court below left both these questions to the jury in his general charge and in his answers to the defendants' third and fourth points. It is claimed that he was in error in both. Taking the questions in their order, we will consider first the subject of the relation of Wymond to the company on the one hand, and to the plaintiffs on the other. The defendant was a corporation very largely engaged in the business of constructing and erecting iron bridges. They owned and used extensive works and had erected an additional building about four hundred feet in length and fifty feet in width. The walls were brick, and at the time of the accident they were already raised to their full height, and upon them an iron roof was being placed for purposes of ventilation. The plaintiffs were laboring men, who were working under the immediate direction of one William Wymond. An apparatus called a trussed plank was being used in putting on the roof, and while the plaintiffs and some other workmen were engaged carrying an iron rafter over this plank it gave way and they were precipitated to the ground, killing one man and injuring several, among them the plaintiffs. A large amount of testimony was taken, but so far as the principal questions are concerned it was not at all contradictory. In regard to the position of Wymond the undisputed testimony was to the following effect: Colonel Piper was the general manager. He had supervision over the whole business of the company, employed and discharged the men and gave general directions. His orders had to be obeyed by all except the president. Next to him in authority was Mr. Sheffler, the assistant manager, whose duties were the same as Colonel Piper's, he giving attention to the details and supervising the whole business in Colonel Piper's absence. The next in authority was William Robinson. He was examined by the plaintiffs and testified that he was the general foreman of the riveting and the laborers and was under the control of Piper and Sheffler. He also said there were other foremen under him. It was he who detailed men to do the various portions of work, and directed what was to be done. Both the plaintiffs were engaged by Robinson, and were sent by him to Wymond to assist in putting on

the iron roof. Wymond had charge of the men who were doing this particular work. The immediate orders to the men engaged in this work came from Wymond. Robinson testified, "Mr. Wymond had control of the men as soon as I gave them to him;" and again, "I was instructed to furnish Mr. Wymond with men by Mr. Sheffler." Wymond's duties are thus described : "I went on various kinds of work, moving machinery, repairing machinery, general repair work; sometimes he (Robinson) would give me three or four men to handle, and at other times only two; that was in the outside shops, but sometimes I would be ordered to go out and take a gang of men and put up a roof, or building or bridges, as the case might be." Q. "You were in charge of the work of the erection of ventilators on the new building of which this is the model?" A. "Well, I suppose you might term it in charge; I was ordered to do that work." Q. "State what your position was." A. "I don't know that I held any commission position; I was put there by Mr. Robinson, as near as I can remember." Q. "To do what?" A. "To raise these trusses and to put up this building; and as for the men he was to furnish me what men I wanted." Q. "Did you employ the men." A. "No, sir." Q. "Did you discharge the men?" A. "No, sir." * * * Q. "Did you employ Mr. Kennedy or Mr. Newberry?" A. "No, sir." Q. "How did they come to be under your control?" A. "I suppose Mr. Robinson sent them to me; he sent all the men that worked for me; they would come there and tell me that Mr. Robinson told them that he wanted them to work there." Both Kennedy and Newberry testified that they were employed by Robinson and sent by him to Wymond to work under his orders. Hurlston, a witness for defendant, testified that he was a foreman; had some men under him; was a gang boss; that Robinson had general charge of the works; that Piper was over Robinson, and was constantly going through the works, generally twice a day, giving orders and directions; that Wymond had charge of the erection of the structure, and was boss, and that Robinson was Wymond's boss. There was no contradiction of this testimony, and it establishes, in our opinion, that Wymond was in no manner the general representative of the company or clothed with its powers. He simply had charge of a gang of men, of varying numbers, neither employed nor discharged by himself, but furnished to him by another who was his superior, and whose orders he was required to obey. Wymond, while he had charge of the work of putting up the ventilator, was himself a workman and worked with the other men. It was testified by Wymond, Watkins and Krebeler that they three made the trussed plank which gave way and caused the accident. It is quite clear to us that Wymond and the men of whom he had charge were engaged in one common pursuit, seeking

[Keystone Bridge Co. v. Newberry.]

to accomplish one common object, and that all of them were subject to the orders of another, who was their common superior.  In these circumstances we think this case is ruled by the cases of Lehigh Valley Coal Co. v. Jones, 5 Norris 433, and Delaware & Hudson Canal Co. v. Carroll, 8 Id. 374.  In the former of these cases Mr. Justice MERCUR, in delivering the opinion of the court, said : " Who are fellow servants in contemplation of law ?  To constitute such they need not at the same time be engaged in the same particular work.  It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purpose. The rule is the same, although the one injured may be inferior in grade and is subject to the control and direction of the superior whose act caused the injury, provided they are both co-operating to effect the same common object."  Again, " Some of the employees were superior in the grade of their employment to Alexander Jones, others were inferior.  Whether superior or inferior, they, as well as he, were all under one common superintendent; in his hands and in his alone was the entire charge of the business placed by the company.  His negligence might be negligence of the company."  In the case of Delaware & Hudson Canal Co. v. Carroll, supra, Mr. Justice PAXSON, in delivering the opinion of the court, said : " There is no room for the allegation that a mining boss, under the Mine Ventilation Act of 1870, is an agent of the mine owner or a co-employee.  He is clothed with no power of engaging and discharging miners and laborers at pleasure.  He is merely a fellow servant with the miner.  *  *  * He has no general power of control.  His duties are confined to special matters.  That they are different from those of others of his fellow co-laborers, or even that they are of a higher grade, does not matter."

In the case of Caldwell v. Brown, 3 P. F. Smith 456, in which it was held that an engineer was a fellow employee for whose acts the employers were not liable, Judge READ, in the course of the opinion, quotes Gilman v. The Eastern Railroad Corp., 10 Allen 233, in which it was held that, " In case of an injury to one servant by the negligence of another, it is immaterial whether he who causes and he who sustains the injury are not engaged in the same or similar labor or in positions of equal grade or authority.  If they are acting together under one master in carrying out a common object, they are fellow servants."  See also, Wright v. N. Y. Cent. Railroad Co., 25 N. Y. 565 ; Morgan v. The Vale of Neath Railway Co., L. J., 35 Q. B. 23 ; Weger v. Pennsylvania Railroad Co., 5 P. F. Smith 463.

We are clearly of opinion that Wymond, upon the undisputed testimony in the case, was not such a representative of the defendant as that they would be liable for his acts of negligence.  A

further consideration of this branch of the case leads us to the same result. The injuries of the plaintiffs, it is claimed, were occasioned by the breaking or giving away of a defective apparatus. Now the apparatus in question was not furnished by the company at all. It was made by Wymond and two others of the workmen, and if it was defective it was the result of the negligence of three fellow workmen of the plaintiffs. No superior officer of the company gave orders that the particular materials used should be selected, or that the particular contrivance itself should be constructed. The workmen made such an apparatus as they deemed sufficient. If it proved insufficient it was an error of judgment on their part for which we can see no ground of liability as against the defendant for the injuries of the plaintiffs. It is quite uncertain under the testimony whether the accident resulted from overloading the truss-plank, or from a defect in the iron rod which sustained it. No testimony was given as to whether there was a flaw in the iron, and it is not at all clear that the rod was too weak to sustain all the reasonable weight that should have been put upon it.

On the second question raised on the trial, to wit, whether the defendant employed Wymond knowing, or having reasonable cause to know, that he was an incapable and unskilful person, not fit to be put in charge of such work, we can find no testimony sustaining either allegation. The learned counsel for defendant in error alleges that Wymond was incompetent, but he does not refer us to any testimony in support of that allegation. He does indeed contend that proof of Wymond's unfitness is found in his own testimony, but a careful examination of that and other testimony proves quite the contrary. He testifies to a large experience in the business of building iron bridges and bridges of iron and wood in combination, and he was engaged upon some of the largest and most important bridges in the country. He could not conduct that kind of work without acquiring much experience in the resisting powers of wood and iron when subjected to heavy pressure. There was actually no affirmative testimony of any want of skill or knowledge upon these subjects, and not a scrap of evidence that the company had the slightest knowledge of any want of capacity on his part to perform the work assigned to him. In the absence of any testimony on this subject we think the learned judge of the court below was in error in submitting the question to the jury. We think the third, fourth and fifth assignments of error are sustained, and on these the

> Judgments are reversed, and writs of *venire facias de novo* awarded.