KLIEGEL, Appellant, vs. THE WEISEL & VILTER MANUFACTURING COMPANY, Respondent.

*December 13, 1892 — January 10, 1893.*

*Master and servant: Injury from negligence: Co-employees: Foreman.*

1. In an action for personal injuries caused by the fall of a heavy condenser, consisting of several sections of coiled iron pipe, which the plaintiff was assisting to take down and apart, it is *held,* upon the evidence, that the negligence, if any, which caused the injury — consisting in the failure to keep in position the braces by which the sections were sustained, and in the improper placing of a bolt which plaintiff was engaged in removing — was the negligence of plaintiff himself or his co-employees, for which the employer is not liable.

2. Although defendant's foreman assisted in the placing of said bolt in setting up the condenser, he acted, in doing so, merely as a co-employee of plaintiff.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant is a corporation created and organized under the laws of Wisconsin, doing business in Milwaukee, and engaged in the manufacture of Corliss engines, machinery for brewers and bottlers, and ice-making and refrigerating machinery. The complaint alleges, in effect, that

Kliegel vs. The Weisel & Vilter Mfg. Co.

September 29, 1890, the plaintiff was in the employ of the defendant in said business; that in the course of such employment he was instructed and commanded by the defendant's foreman to assist in taking down and apart a certain machine, known as a "condenser," the same being a part of the ice-making and refrigerating machinery manufactured by the defendant; that the defendant, not regarding its duty, conducted itself carelessly, negligently, and unskilfully in that behalf, by providing and maintaining unsafe, dangerous, and defective appliances in the support of said condenser while the plaintiff was so engaged in taking down the same, of which said defendant had notice, and knowingly suffered to remain in such dangerous, defective, and unsafe condition, whereby a part of said condenser fell upon the plaintiff and greatly injured him, for which injury this action is brought. The answer alleges contributory negligence on the part of the plaintiff. At the close of the plaintiff's testimony the court granted a nonsuit, and from the judgment entered accordingly the plaintiff appeals.

For the appellant there were briefs by *Bloodgood, Bloodgood & Kemper*, and oral argument by *Francis Bloodgood*.

For the respondent there was a brief by *Van Dyke & Van Dyke* and *Winkler, Flanders, Smith, Bottum & Vilas*, and the cause was argued orally by *G. D. Van Dyke*.

CASSODAY, J.  The condenser in question consisted of ten sections. Each section consisted of coiled two-inch pipe, and was about twenty feet long, running north and south, about five and one-half feet high, and about six inches wide at the base. These several sections stood some eighteen or twenty inches apart, and parallel with each other, upon the floor, or on blocks upon the floor. In putting up such sections, they commenced first with the one at the west end, and then the one next to that, and so on towards the east,

Kliegel vs. The Weisel & Vilter Mfg. Co.

until the ten were erected.. After all the ten sections were thus stationed, a header, consisting of three-inch pipe, was raised at the ends of these several sections on one side by a crane and tackle, and then coupled or bolted to each of said sections. Such bolts were mostly put through from the inside, so that the nuts would be on the outside, where they could more easily be removed. In pursuance of instructions from the defendant's foreman, for the better securing of such sections, the one on the west end, and perhaps others, were spiked to the floor or blocks, and wooden braces, consisting of pieces of boards three or four feet long, one inch thick, and four or five inches wide, were placed between the respective sections. After the sections were all erected, as indicated, they were painted. On September 29, 1890, the defendant's foreman ordered the plaintiff and five of its other employees to take the several sections down. Some of the employees arranged blocks to let the coils or sections down upon. The plaintiff and another commenced in the middle, taking off the header,— taking out the bolts,— the one working towards the west, and the plaintiff towards the east. The plaintiff found that the bolt in the third section from the east end had been put in from the outside, and hence he stepped in between the second and third sections from the east end, and took the nut off from that bolt, and then hammered the bolt out with his monkey wrench, hitting it three, four, five, or six times, when the whole thing fell, and the third section fell upon the plaintiff. At the time of such fall all the other bolts had been taken out, except one in each end section, and the one so left in at the west end broke off. At the time of the injury the plaintiff was about forty-five years of age, and had lived in Milwaukee about seventeen years, but did not speak very good English. He was employed by the defendant's foreman, and had worked for the defendant over a

year in these same shops.   The defendant had manufact-
ured a great many condensers that year.   This was the
third one the plaintiff had helped put up and take down.

Such is a brief summary of the evidence upon which the
trial court granted the nonsuit.   After a careful examina-
tion of all the evidence we are constrained to hold that the
nonsuit was properly granted.   The allegation to the effect
that the defendant provided and maintained unsafe, dan-
gerous, and defective appliances for the support of the
condenser is certainly not supported by the evidence.
Counsel strenuously contends that the defendant's duty to
furnish safe appliances includes competent co-employees
and instructions to them and the plaintiff.   Assuming that
the evidence tends to prove that some of such co-employees
were negligent, yet it fails to show that any of them were
incompetent to perform the work assigned.   They all, in-
cluding the plaintiff, appear to have been possessed of at
least ordinary intelligence.   There does not appear to have
been anything very complicated in the putting up or taking
down of the several sections mentioned.   Each section was
narrow at the base, and heavy; and, in view of its height,
it must have been obvious to such employees that the same
was liable to fall in case of any considerable lateral pressure,
unless secured in some way by stays or braces.   As indi-
cated, at the time of the injury all the bolts attaching the
header to the several sections had been removed, except
one in each of the two end sections; and hence, when the
plaintiff knocked out the only intervening bolt, the natural
weight or sag of the header drew the several sections onto
each other, and caused the fall.   True, had the bolt which
the plaintiff thus knocked out been put through from the
inside, so that the nut could have been removed, and the
bolt driven out from the outside, it is quite certain that
the plaintiff would not have been injured as he was, if at
all, although, in the absence of such stays or braces, the

sections might, nevertheless, have fallen as they did. The bolt which the plaintiff thus hammered out was thus put in from the outside by a co-employee of the plaintiff, assisted by the foreman. But in the performance of such service the foreman acted as a mere co-employee of the plaintiff. *Dwyer v. Am. Exp. Co.* 82 Wis. 307. Even if it was negligence to thus put in that bolt, yet it was not actionable negligence. *Ibid.* The more apparent negligence consisted in the failure to retain the wooden braces in their position until the header was entirely removed, and hence such negligence, if any, was manifestly the negligence of the plaintiff or his co-employees; and, upon principles so well established as to require no citation of authority, the defendant is not liable therefor.

These views render it unnecessary to consider the several exceptions to the exclusion of evidence, since, if all the evidence offered had been admitted, the result would necessarily have been the same.

*By the Court.*— The judgment of the circuit court is affirmed.