## JUDSON & LITTLE v. TUCKER.

(Court of Civil Appeals of Texas. Ft. Worth. March 22, 1913. Rehearing Denied April 12, 1913.)

1. MASTER AND SERVANT (§ 192*)—FELLOW SERVANTS—SERVANTS OF ONE MASTER UNDER CONTROL OF ANOTHER.

Where one master lends or hires his servant to another for a particular employment, the servant in that employment must be dealt with as a servant of the master to whom he is hired or lent, although he remains a general servant to the person who hired or lent him, and, if he receives an injury in the service of the person to whom he is hired or lent, he cannot recover therefor, the test being whether in the particular service he is engaged to perform he continues liable to the direction or control of his master, or becomes subject to the direction of the one to whom he is hired or lent; and, hence plaintiff, a servant of a transfer company, who was directed to take a team and do some moving for a well-driving company, was, while engaged in such work under the direction of the driving company's foreman, a servant of that company and a fellow servant of its servants, for whose negligence, other than that of a vice principal or one performing a nondelegable duty of the master, he could not recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 379–381; Dec. Dig. § 192.*]

2. MASTER AND SERVANT (§ 189*)—INJURY TO SERVANT—"FELLOW SERVANT"—"VICE PRINCIPAL."

A servant without power to employ or discharge is not a "vice principal," but as to servants of the same master is a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, pp. 7662, 7313–7316.]

3. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY—SAFE PLACE FOR WORK—DELEGATION.

A master is liable for the negligence of a servant who is discharging the primary or nonassignable duty of the master to provide a safe method for work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

4. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY—SAFE PLACE FOR WORK.

A master is bound to exercise due care to adopt a reasonably safe method of work and to provide suitable means to accomplish the general object of the work, but mere details in its performance may be committed to fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

5. MASTER AND SERVANT (§ 216*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

A servant assumes the dangers arising from the negligence of his fellow servants when committed in the performance of their own duties, as well as those which are obvious and incidental to their employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. § 216.*]

6. MASTER AND SERVANT (§ 163*)—MASTER'S LIABILITY — METHOD OF WORK — INSUFFICIENT NUMBER OF SERVANTS.

A master's liability to adopt a reasonably safe and practicable method of work includes the duty to provide a sufficient number of men therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 328–330; Dec. Dig. § 163.*]

7. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY — ASSUMPTION OF RISK — METHODS OF WORK—INSUFFICIENT NUMBER OF SERVANTS.

A servant knowing that the number of men present to perform a particular piece of work is insufficient assumes the risk involved in the undertaking with such number.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

8. MASTER AND SERVANT (§ 276*) — ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—PROXIMATE CAUSE.

Evidence in an action for injuries by the general servant of another employed in a particular work as the servant of defendant *held* to show that the negligence of his fellow servants was the proximate cause of his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by C. C. Tucker against J. W. Judson and T. H. Little, doing business as Judson & Little, and the Binyon Transfer & Storage Company. Judgment for the Storage Company and for plaintiff against Judson & Little, and they appeal. Reversed, and judgment rendered for appealing defendants.

Sidney L. Samuels and Lassiter, Harrison & Rowland, all of Ft. Worth, for appellants. McLean & Carlock, of Ft. Worth, for appellee.

CONNER, C. J. C. C. Tucker brought this suit in the district court against J. W. Judson and T. H. Little and the Binyon Transfer & Storage Company, a corporation, to recover damages in the sum of $15,000 for certain personal injuries. Plaintiff alleged that Judson & Little were engaged in sinking deep wells near the city of Ft. Worth, and that on the date alleged they called upon Binyon Transfer & Storage Company, which was engaged in the moving, transfer, and storage business, "to send out to their said wells one of their large moving wagons with a driver and his assistant to do some work in connection with the moving of some of the materials or supplies from one portion of their works to another, and that in pursuance of this request said defendant company directed plaintiff to take the team which he was in charge of and one of the other employés of the company, a negro laborer, and to report to the said defendants at their said place of work for the purpose of assisting them in moving the property desired to be moved by them. That in pursuance of this

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

request or direction of his employer the plaintiff took his said team then under his charge, and went to the wells of the defendants Judson & Little, and was directed by their foreman, the superintendent in charge of said work, to assist in moving a quantity of materials, tools, and supplies from one of their said wells to another well distant several hundred yards. That this work was performed by the plaintiff, said superintendent furnishing the men to load the said materials onto plaintiff's wagon, and that thereupon the said superintendent, who was then and there the vice principal of the defendants Judson & Little, called upon the plaintiff to load upon the wagon for the purpose of removal a certain heavy, solidly built house used, among other things, for the purpose of a tool and storage house by the said defendants, and being in dimensions about 12 by 14 feet in breadth and about 12 feet in height, and weighing from one to two tons. That the said superintendent and vice principal of the said defendants Judson & Little was in full control and management of the said work, and the plaintiff acted under nis direction and in compliance with his orders in assisting to move the said house, and in doing so received the serious, painful, and permanent injuries hereinafter set out."

As alleged and as shown by the undisputed evidence, the accident occurred under substantially the following circumstances: Appellee was employed as the driver of one of the large moving wagons owned by the Binyon Transfer & Storage Company, and had been for some time; that as such he had experience in loading, moving, and unloading heavy articles, and that on the occasion in question as alleged in his petition the appellants over the phone requested Mr. Binyon of the corporation named to send out to them one of his large wagons with a driver and assistant for the purpose of assisting appellants in moving certain property desired to be moved by them; that in pursuance of this request, and by direction of Mr. Binyon, he took a team with an assistant and reported as directed to appellant's foreman in charge of their work, and was by him directed, among other things, to assist in moving the house in question; that this foreman, Myers by name, "was in full control and management of the said work," and appellee "acted under his direction and in compliance with his orders in assisting to move the said house"; that on the return of the plaintiff for the purpose of removing the toolhouse (after having removed certain tools) the wagon was backed up near it, and the hind wheels sunk in trenches so as to lower the end of the wagon near the toolhouse. By direction of the foreman his force, consisting of five men, in addition to the plaintiff and his helper, tilted the house over toward the wagon. The foreman concluded however, that the weight of the house might cause the hind wheel to crush through its walls, and directed the operatives to hold the house until a plank could be placed across the hind wheels upon which the house might rest. Thereupon some one (there is evidence tending to show that it was the foreman of Judson & Little) picked up a piece of scantling about two inches thick, six or eight inches wide, and about five feet long, and handed it to the plaintiff's negro assistant, who passed it on to the plaintiff, and who therewith undertook to prop the leaning toolhouse. After the plaintiff had fixed the scantling so as to prop the house, some one not certainly identified in the evidence called out, "All right," whereupon one or more of the men who had been holding the house in its inclined position let go their hold, and its weight came down upon the piece of scantling referred to. The scantling broke, and in the fall of the house plaintiff's leg was caught and severely injured.

Of the acts of negligence alleged as grounds for recovery, and which there was evidence tending to support, the court submitted the following: First, whether the foreman was guilty of negligence in adopting the method of loading the house he did; second, whether the foreman was guilty of negligence in attempting to load the house with the number of men employed; third, whether the foreman, Myers, failed to properly direct and control the labors of the men while engaged in lifting the house so as to prevent its fall; and, fourth, whether the foreman was guilty of negligence in furnishing the plaintiff with a defective or insufficient brace or prop.

Upon the trial the court directed a verdict in favor of the Binyon Transfer & Storage Company, and we are not called upon by any assignment or cross-assignment to review this action of the court. But as against Judson & Little the jury returned a verdict in plaintiff's favor for $2,812, from which judgment this appeal has been prosecuted.

[1] Appellants' first assignment of error is to the action of the court in refusing a peremptory instruction in their behalf, the contention being that the facts and circumstances in evidence show without dispute that the risk and dangers, if any, in doing the work the way in which it was done and with the number of men at hand, were patent and obvious, and known to the plaintiff, and that he, therefore, assumed the risk and danger from which his injuries resulted. In answer to these contentions in appellant's behalf, appellee first insists that the relation of master and servant did not exist between him and appellants, and that, therefore, any negligence on the part of any of the servants of appellants that proximately caused his injuries rendered them liable; and, second, that even though it be held that the relation of master and servant did exist between appellee and appellants yet the negligence of the foreman alleged and submitted by the court

as authorizing a recovery relate to the performance of personal and nonassignable duties of the master toward his servant, and that, therefore, appellants are liable. It will be thus seen that one of the vital questions raised for our determination is whether the plaintiff at the time and under the circumstances of his injuries was the servant of appellants or of his general employer, the Binyon Transfer & Storage Company. If the servant of the latter, then the principle of assumed risk has no application, and the appellants would be liable for any negligence of their foreman which proximately caused the injury, whether such foreman was a vice principal as to them or not. If, on the contrary, the plaintiff at the time and in relation to the work undertaken bore the relation of a servant to appellants, then he assumed as matter of law the risks arising out of the negligence of appellants' other servants, and appellant would not be liable therefor unless such negligence was committed by a vice principal or in the performance of a nondelegable duty of the master.

The question presented is an interesting one, and not entirely free from difficulty. The case invoked by appellee as most in point in support of his contention that he was not under the circumstances one of appellants' servants is the case of Murray v. Dwight, a New York decision which may be found reported in 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673. To this is added Burton v. Railway, 61 Tex. 535; Brennan v. Berlin Iron Bridge Co., 74 Conn. 382, 50 Atl. 1033; Zeigler v. Railway Co., 52 Conn. 543, 2 Atl. 462; N. O. Ry. Co. v. Norwood, 62 Miss. 565, 52 Am. Rep. 191; Joslin v. Grand Rapids Ice Co., 50 Mich. 516, 15 N. W. 887, 45 Am. Rep. 54; Crockett v. Calvert, 8 Ind. 127; Railway Co. v. Conroy, 63 Miss. 562, 56 Am. Rep. 835; Railway Co. v. State, 58 Md. 372. The New York case of Murray v. Dwight so urgently relied upon by appellees was briefly one in which a servant of a truckman was sent with a horse by his master to a warehouse for the purpose of operating trucks for hoisting heavy material from one story to another, which was to be done under the direction of a foreman of the warehouseman. The rope to one end of which the horse was to be hitched and by which articles were to be hoisted extended under a pulley block fastened near the lower floor, and thence on over another pulley block fixed near the top of the building. After the servant of the truckman had repaired to the warehouse, he was told to go into the building, and as he started to do so the pulley block from above, which one or more of the servants of the warehouse were endeavoring to adjust, was negligently permitted to fall upon him, and he was injured. It was held that the servant of the truckman was not a fellow servant with those engaged by the warehousemen. We will not take the time to discuss all of the cases cited by appellee, some of which

at least are easily distinguishable from the one before us, nor attempt to reconcile them with cases hereinafter cited which are in conflict or in apparent conflict therewith. We will observe, however, in passing that the opinion in the New York case upon which appellee so strongly relies was by a divided court, and that the truckman whose status was therein fixed was not injured by an act done in the very work for which he was employed, but instead by the negligence of the warehouseman's servants in adjusting the overhead pulley necessary as a fixture before the truckman's work could begin or be carried on. The servants of the warehouseman so engaged with the pulley block above were in an important sense performing their master's primary duty to suitably prepare the building and appliances for the truckman's labor. It is otherwise here. Appellee was injured by acts or omissions of appellant's servants while engaged with him in the very work he undertook to do or aid. The acts or omissions relied upon as negligent are not severable from the whole, but constituted an integral part of the particular work in hand. It seems to us that this case on the question we are now discussing is more nearly in accord with the following authorities, viz.: Delory v. Blodgett, 185 Mass. 126, 69 N. E. 1078, 64 L. R. A. 114, 102 Am. St. Rep. 328; Coughlan v. City of Cambridge, 166 Mass. 268, 44 N. E. 218; Higgins v. W. U. Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Brady v. Chicago & G. W. R. Co., 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712; Hardy v. Shedden Co., 78 Fed. 610, 24 C. C. A. 261, 37 L. R. A. 33; 26 Cyc. 1285.

In the case of Green v. Sansom, 41 Fla. 94, 25 South. 332, it appeared that a servant of an independent contractor was sent to do a certain piece of work for the employer of such contractor, and that from the time such servant set to work the employer assumed and exercised control over him and the work performed by him, directing and controlling him as to the methods and details by which the desired result was to be accomplished, and it was held that the relation of master and servant was thereby constituted between the employer and the servant of the independent contractor. In 26 Cyc., supra, the author says: "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him; and, if the servant receives an injury in such employment from the negligence of a servant of the person to whom he is lent, he cannot recover therefor. The test is whether in the particular service he is engaged to perform he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is hired or lent." This

general statement of the law seems to be well supported by the authorities herein last cited, and to be well illustrated by them. It seems not to be inconsistent for an employé to occupy a dual relation. He may be the servant of and paid by a general master, but if employed elsewhere, temporarily subjecting himself to the complete direction and control of the temporary employer in the work to be performed, he becomes for the time being and as to that work the servant of the special master, and it is of no consequence whether he is loaned for the purpose or whether he is hired, not directly, but through his general master. In the case before us it cannot be questioned that appellee voluntarily yielded to the direction of his general master to aid and assist appellants in the performance of such work as they desired, it not being specified at the time what particular thing was to be done; that he voluntarily repaired to the proper place and voluntarily yielded to the temporary control and direction of appellants' foreman—not to undertake the removal of the toolhouse for his general master as an independent contractor, but to act only as an aid or assistant of the servants of appellants who were at the time charged with the responsibility and duty of accomplishing the specific object to be attained, viz., the removal of the toolhouse. Under such circumstances, if we have interpreted the authorities aright, appellee for the time being and as to the particular work in which he was engaged at the time of his injury was a fellow servant with those of appellants, notwithstanding his general employment by the Binyon Transfer & Storage Company.

[2-4] Was the appellee entitled to recover notwithstanding his relation to appellants? While so alleged in his petition, it is not now seriously contended in his behalf that appellants' foreman, Myers, was a vice principal. There is no evidence showing that Myers had the power to employ or discharge, and hence, under the ruling of our Supreme Court in the recent case of Lantry-Sharpe Contracting Co. v. McCracken, 150 S. W. 1156, it must now be conceded that he did not occupy such relation toward appellants. He therefore was but a fellow servant with appellee, and the further important question for our determination is: Was Myers in the performance of the acts submitted by the court as grounds of recovery discharging primary or nonassignable duties of his master? If he was, as stated and as appellee insists, appellants are liable for his negligence. The general duty of appellants was to exercise due care to adopt a reasonably safe method, and to provide suitable conveyance and means for the accomplishment of the general object to be attained, which was the removal of the toolhouse. But mere details in the performance of the work could legally be committed to the servants; to adopt any other rule would require the master's personal presence and supervision throughout all work undertaken, and the law imposes no such burden.

[5] The law is that the servant assumes the dangers arising from the negligence of his fellow servant when committed in the performance of their own particular duties as well as those that are obvious and ordinarily incident to their employment. See Lantry-Sharpe Contracting Co. v. McCracken, 150 S. W. 1156; G., C. & S. F. Ry. Co. v. Larkin, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944; Whittaker v. Bent, 167 Mass. 565, 46 N. E. 121; Bedford Quarries Co. v. Bough, 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; Ling v. St. Paul, M. & M. R. Co., 50 Minn. 160, 52 N. W. 378, and note on this case reported in 54 L. R. A. 122; Richmond Locomotive & Mach. Co. v. Ford, 94 Va. 627, 27 S. E. 509; La Belle v. Montague, 174 Mass. 453, 54 N. E. 859; Kliegel v. Weisel & Vilter Mfg. Co., 84 Wis. 148, 53 N. W. 1119; Bedford Belt Ry. Co. v. Brown, 142 Ind. 659, 42 N. E. 359; Keystone Bridge Co. v. Newberry, 96 Pa. 246, 42 Am. Rep. 543.

An examination of the cases last cited will make clear the application of the principles suggested, thus:

In the case of Lantry-Sharpe Contracting Co. v. McCracken, by our Supreme Court, McCracken was engaged with other employés in the construction of a rock-crushing plant, and during the work it became necessary to adjust a heavy upright piece of timber, and the negligence charged and upheld by the verdict of the jury was that of a foreman in charge of the work in giving an order to certain of the employés to pull a "tag line" which caused the upright to overcome the sustaining force of its brace, and to fall upon McCracken. The principal question discussed in that case was whether Bruce, the foreman, was a vice principal, but the judgment was reversed and rendered, in order to do which it must necessarily have been held that the negligent direction of the foreman was but an incident of the work. In other words, that the order of the foreman—the method adopted to overcome a temporary difficulty—was but a detail of the work for which the master was not liable.

Of like purport is the case of Richmond Locomotive & Machine Works v. Ford, supra, where it was held that the master was not liable for an injury to an employé resulting because of the negligent manner in which the foreman, without power to employ or discharge, directed the removal of certain car wheels. So also in La Belle v. Montague, above, where a workman, together with three others, was engaged in lowering certain heavy flagstones, and was injured by the sudden fall of one of the stones. It was claimed that the foreman under whose direction the work was being done "should have given more specific orders" and "that some other means should have been adopted in letting it down." But it was held that the master was not liable, the court stating

that "it is difficult to see what orders should have been given which it was necessary to give to one so experienced as the plaintiff," and, further, that "there is nothing to show that the stone could not properly be handled by men with their hands, or to warrant the finding that the use of a derrick or such other mechanism was necessary. It would seem from the evidence that the accident was probably caused by the other men letting go before the plaintiff did. If this was so and his fellow workmen were negligent in letting go too soon, this does not give him the cause of action against the defendant."

In Ling v. St. Paul, M. & N. Ry. Co., supra, it was held that the master was not responsible to a servant for the act of a fellow servant in negligently selecting a defective instrument—an iron hook—to which to attach a pulley to raise a heavy weight in a boiler shop, that being a proper detail of the work in which the servants were engaged.

In the case of Keystone Bridge Co. v. Newberry, a workman was engaged with others, under the direction of one Wm. Weimand, in carrying iron rafters over an apparatus called a "trussed plank," which gave way and by reason of which the plaintiff was injured. It was claimed that the injuries were occasioned by the breaking or giving way of a defective apparatus. The court said: "Now, the apparatus in question was not furnished by the company at all. It was made by Weimand and two others of the workman, and, if .it was defective, it was the result of the negligence of three fellow workmen of the plaintiff's. No superior officer cf the company gave orders that the particular material used should be selected, or that the particular contrivance itself should be constructed. The workmen made such an apparatus as they deemed sufficient. If it proved insufficient, it was an error of judgment on their part for which we can see no ground of .liability as against the defendant for the injuries of the plaintiff."

We will notice a further case. In G., C. & S. F. Ry. Co. v. Larkin, Larkin, an employé of the railway company, was injured by a defective lantern used by him in the course of his employment. The negligence charged against the railway company was that it failed to have the lantern furnished to the plaintiff inspected before furnishing it, or after it had been furnished, and while he was using it. A recovery was denied; our Supreme Court, stating, among other things that: "A master is not required to inspect the common tools and appliances which are committed to the custody of a servant who had the capacity to understand their character and uses"—citing a number of cases, and further quoting with approval from Miller v. Ry. Co., 21 App. Div. 45, 47 N. Y. Supp. 285, as follows: "There is no duty resting on an employer to inspect during their use those common tools and appliances with which every one is conversant. If a spade, a hoe, or a push stick either wears out or becomes defective, the employer may ordinarily rely on the presumption that those using the article will first detect its defect." In the case of Wachsmuth v. Electric Crane Co., 118 Mich. 275, 76 N. W. 497, the injured party was using a ladder which was defective, through which defects he was injured. The Supreme Court of Michigan said: "In heavy or, complicated machinery, and where the person called upon to use the appliance' may not possess the skill to detect unfitness, or have the opportunities to do so, the law may require diligence upon the part of the master; but where the appliance is a common tool, of which the man who uses it is necessarily well qualified to judge, and who, when he uses it, has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool, if it is unsafe."

[6-8] Bearing in mind the cases cited, we think it must be held that appellee's injuries resulted from risks assumed by him, including risks arising from the negligence of his fellow servants only, for which appellants are not liable. He was a man of mature years—40 years old—and, as stated, with several years' experience in lifting and moving heavy articles. Although he had never before aided in moving a house, no experience was necessary to bring home to his consciousness the fact that the house in question was heavy, and his own testimony shows that he realized this in the beginning. He testified that "he realized it was a big job," and that, if he had been going to move the house, he would have taken it apart and moved the sections. Another witness testified that he would have used a block and tackle. But these suggestions seem to be but differences of judgment. The evidence wholly fails to support a conclusion that ordinary care would have dictated a different plan of removal than was adopted. Appellants provide a heavy wagon with an experienced driver and helper, and also a foreman and other assistants, and nothing goes to show that the house could not be so moved, or was variant from the plan or method theretofore adopted. So far as the "method" of removal was involved, no more was required of appellants than an exercise of ordinary care to adopt one reasonably safe and practicable. It may be said that the master was negligent in a failure to provide a sufficient number of men. This duty, indeed, the law would impose upon appellants, but notwithstanding their failure in this respect if appellee knew the number of men present, as he unquestionably did, and knew that the number was insufficient, although he finally testified otherwise, he assumed the risks involved in the undertaking with the number of men present. But, whatever else may be said with ref-

erence to this ground of negligence, after careful consideration we do not think a recovery can be predicated thereon. If it be assumed, as we doubtless should do in deference to the jury's verdict, that appellants were guilty of negligence in a failure to furnish a greater number of men, yet it seems evident that this was not a proximate cause of appellee's injuries. To illustrate, Herman Kroschinske testified: "When the prop was put there (under the inclined house), I heard some one say, 'All right,' but I do not know who it was; some one said, 'All right,' and the weight came down. When they said, 'All right,' I turned loose. I understood 'All right' to mean that is all right. I say I saw the prop under there, and I relaxed my hold and the thing just came over." W. E. Roe testified, among other things: "When he [appellee] put the brace under the building, he said, 'All right,' or 'Turn loose,' or something like that, and I turned loose and stepped back, and so did the other boys on my side of the building, and the house came down. I certainly tried to protect him if I could. I do not think any one said, 'All right'—I do not think anything about it—I know it, or I would not have turned loose."

The appellee himself at one place in his testimony testified: "As to what caused the house to fall, I state to you that the men shoved it back on me, the men in front over by the wagon, the men that were putting the board across there; they shoved it, and that was not any of Binyon's men." The evidence is undisputed that the men actually engaged were of sufficient force to so lift as to incline the building toward the wagon, and the only reason appearing in the evidence why the house was not wholly lifted from the ground and put upon the wagon was that the foreman, as stated, concluded that the wheels of the wagon would penetrate the walls of the house, and he gave the order already mentioned. It certainly appears that men enough were present to sustain the weight of the house at the angle it was shown to be, and that the accident would not have happened save for the fact that appellant's employés ceased their efforts to hold the house upon the exclamation shown in the testimony hereinabove quoted. What has been said also applies in part to the alleged insufficient prop. Nothing in the evidence indicates that the prop had been furnished by appellants, or that its use had been by them in contemplation. So far as the evidence tends to show, its use was suddenly called for by the foreman, and nothing appears tending to show that there was any defect in the prop itself, or that, had the men engaged in lifting the house retained their hold and continued their efforts to sustain its weight, the prop was insufficient to have upheld all of the weight intended by the

foreman at the time he gave the order for its use. As it seems to us, the proximate cause of appellee's injuries is undeniably the negligence of his fellow servants in turning the inclined house loose, or that of the foreman, also a fellow servant, in giving the order that he did. Without further discussion, we think appellee's injuries were either caused by dangers that were perfectly obvious to him, or by the negligence of one or more of his fellow servants.

It follows that the court should have peremptorily instructed the jury in appellants' favor as they requested, and that the judgment must be reversed and here rendered for appellants.