**DENNIS et al. v. MABEE et al.**

No. 10569.

Circuit Court of Appeals, Fifth Circuit.

Dec. 10, 1943.

Rehearing Denied Jan. 17, 1944.

John J. Watts, of Crane, Tex., and S. A. Crowley, of Fort Worth, Tex., for appellants.

Robert A. Wilson, of Amarillo, Tex., Curtis White, of Dallas, Tex., and Jack M. Randal, of Lubbock, Tex., for appellees.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

D. D. Dennis brought suit for personal injuries, under an alleged common law liability, against J. E. Mabee, L. E. Mabee, as individuals, and The J. E. Mabee Company, a business partnership, Halliburton Oil Well Cementing Company, Fox Rig and Reel Company, William Cameron Company, Inc., Frick-Reid and Company, and John H. Marks. The Court, at the end of plaintiff's testimony, sustained a motion to dismiss all the defendants other than the Mabees and Halliburton Oil Well Cementing Company. No specification of error is based upon the elimination of the dismissed defendants. At the conclusion of all the testimony the lower Court sustained a motion for a directed verdict, and judgment was entered accordingly, from which this appeal is prosecuted.

In drilling an oil well belonging to the Mabees a heavy flow of gas developed, causing the well to blow out, and it be-

came necessary to shut off this gas in order that drilling for oil might continue. The method of shutting off the gas was by pouring a mixture of dirt and cement, called baroid, into the well. This baroid is put up in 100-pound paper sacks and sold commercially in the oil field territory. Halliburton Oil Well Cementing Company was engaged by Mabee to furnish two trucks on each of which was affixed a machine for mixing the filling material. The sacks of baroid were carried by laborers to the hopper of the mixing machines where the sacks were ripped open and poured into the hopper, from whence baroid went through the mixers into the hole. It is important that the operation be carried on rapidly and in order to have available laborers to carry the sacks to the hopper it was necessary for the Mabees to secure a large number of laborers. Halliburton Oil Well Cementing Company, hereinafter referred to as "Halliburton", entered into a contract for a fixed sum to furnish the equipment and the men to operate the equipment for the purpose of mixing the baroid and pouring same into the well. The Mabees also arranged with one Bill Eubanks to procure a large number of men to assist in the effort to close off the gas. The Mabees purchased baroid from several dealers, who were originally defendants but later dismissed. These dealers delivered and stacked the sacks of baroid near the well. Eubanks rounded up a number of laborers, some of whom were members of his regular crew and some of whom were farmers in the community. Included in the number of laborers brought to assist the Mabees in closing off the well was the plaintiff, D. D. Dennis. Dennis was a roustabout or laborer in the oil fields, although he testified that he was without experience in the stacking of sacks of mud or baroid. Eubanks delivered the men to the scene and told them they would be shown what to do. He undertook to give no instructions and to exercise no control, or right of control and direction, over the men. They were under the direction and control of one Wylder, Mabee's superintendent. It also appears that when the sacks of cement were brought by the laborers to the hopper several employees with knives ripped open the paper sacks and let the material run into the hopper. There is evidence that the baroid, which was frequently referred to as "mud" by the witnesses, although it does not appear that it was wet, was stacked in a pile approximately seven or eight feet high, one hundred feet long, and thirty or forty feet wide, approximately four or five thousand sacks being on hand for the work. The stack was approximately twenty sacks in height and was open and obvious to all. There is testimony that somebody, perhaps one of Halliburton's men, pointed, or directed the workmen's attention, toward the center of the stack, which the plaintiff interpreted to mean a direction to take sacks off the center of the stack instead of the end. The men were not under the control of Halliburton's employees, two of whom were operating the mixer at one end, and the other two were operating the mixer at the other end, of the stack. Their function was to operate the mixer, rather than to direct the work of the roustabouts, who were under the control and supervision of Wylder, the superintendent for Mabee.

Shortly after some man, probably one of Halliburton's employees, had made the gesture and pointed to the center of the pile of sacks, the plaintiff went there to work when some of the sacks fell from the stack and injured him.

Eubanks was a subscriber to Workmen's Compensation under the Statutes of Texas, as were the Mabees. The insurance carrier of Eubanks, whose general employee Dennis was, considering itself liable for the injury to Dennis, as an employee of Eubanks, furnished medical treatment, hospitalization, and paid compensation under its assumed duty as compensation carrier for Eubanks.

Plaintiff alleged that he was a business invitee of the defendants and that they failed to perform their duty in the negligent stacking of the sacks of mud, which caved in and fell upon the plaintiff, and because of said negligence and said injury they became liable to the plaintiff. The complaint also alleges that one Clark, an employee of Halliburton, was in charge of the job and had supervision thereof. The complaint also alleges the failure to warn the plaintiff of the danger and the giving of directions above mentioned to take sacks from the center of the pile, and his reliance upon the superior knowledge of the defendants to furnish him a reasonably safe place in which to perform his duty. The lower Court held that under the evidence there was no legal liability nor breach of duty owed by the defendants to the plaintiff.

■ The evidence is clear that Halliburton's contract was merely to operate the mixing machines and that Halliburton had no further duties in connection with the undertaking. Its four employees were mere operatives of the two machines and the evidence as to the giving of any directions by Clark or some other employee of Halliburton is too vague and uncertain, but if any directions were so given, they were that of a volunteer and were without authority. It is shown clearly that Halliburton had nothing to do with the stacking of the sacks nor with the direction and control of the plaintiff. For aught that appears the gesture made by Halliburton's employee was merely a voluntary act perhaps to point out the necessity of taking sacks from the top of the stack as a matter of safety. At any rate, it clearly appears that Halliburton had nothing to do with the creation of the dangerous condition alleged. The motion for directed verdict as to Halliburton was properly sustained.

■■ The testimony shows without dispute that even though the plaintiff was a general employee of Eubanks, an independent contractor, Eubanks' only connection with the enterprise was the procuring of laborers to work for the Mabees. He rounded up some of his own employees and others, brought them to the scene, and told these men, according to plaintiff, that "they (meaning Mabees) would tell us what to do". The plaintiff understood that he was being carried to the scene by Eubanks for the purpose of working for the Mabees in the closing off of the wild well. It further appears that Wylder, the superintendent of Mabee, not only had the right to control and supervision but actually exercised it. Under these circumstances the plaintiff became the employee of Mabee and the relation of master and servant existed.[1] It does not appear that Dennis worked continuously for Eubanks but even if he be considered a general employee of Eubanks, nevertheless, on the occasion in question, under the borrowed servant rule, and under the undisputed testimony that Eubanks not only did not attempt to exercise any supervision or control but expressly placed them under the control of the Mabees, the liability of Mabee, if any, is not that of an invitor but that of an employer.[2]

■ Mabees were subscribers to Workmen's Compensation and the exclusive remedy of an employee against his employer is provided by the Workmen's Compensation Statutes of Texas.[3]

■ The compensation carrier for Eubanks, which has intervened in this case, paid compensation and furnished medical and hospital expenses to the plaintiff, but this act on the part of the compensation carrier of Eubanks could not change the relationship between the plaintiff and the Mabees, nor change the liability or legal status of either Dennis or the Mabees. We, therefore, conclude that the plaintiff had no right of action at common law against the Mabees.

It follows, therefore, that the lower Court was without error in directing a verdict for the defendants and the case is affirmed.

### On Petition for Rehearing.

### PER CURIAM.

■■ There was no negligence on the part of defendants in failing to furnish the plaintiff with a safe place in which to do the work in question. The situation was patent and obvious and there was no occasion to warn the plaintiff of facts which were apparent to all, whether skilled or unskilled. If there was any negligence shown in the case, it was in the manner in which the work was done, not in the place. If the work was done negligently and done under the direction and supervision of Eubanks, an independent contractor, the defendants would not be liable. It follows, therefore, that if the defendants did not have the right to direct the plaintiff as to the manner in which the work was being done, then there was no liability shown against the defendants. The vital issue is the right to direction and control rather than actuality of direction and control in determining whether the relationship of master and servant existed between the plaintiff and the defendants. Plaintiff's own testimony shows clearly that he knew

---

[1] Maryland Casualty Co. v. Donnelly, Tex.Civ.App., 50 S.W.2d 388; Shannon v. Western Ind. Co., Tex.Com.App., 257 S.W. 522; King v. Galloway, Tex.Com. App., 284 S.W. 942; Hartford Accident & Ind. Co. v. Addison, 5 Cir., 93 F.2d 627.

[2] Judson & Little v. Tucker, Tex.Civ. App., 156 S.W. 225; Magnolia Petroleum Co. v. Francis, Tex.Civ.App., 169 S.W.2d 286.

[3] Oilmens Reciprocal Ass'n v. Gilleland, Tex.Civ.App., 285 S.W. 648.

that Eubanks had rounded up the crew to work for Mabee in shutting off a wild well, and it is not open to argument that the plaintiff understood that Mabee would tell him what to do and that he would not receive his orders from Eubanks.

The petition for rehearing is denied.

Denied.